Ex parte Ben A. JOHNSON, Mover,

v.

Mr. Victor G. WALKER, Warden, Louisiana State Penitentiary, Angola, Louisiana, and the State of Louisiana, Respondents.

Misc. No. 583.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Nov. 17, 1961.

J. Minos Simon, Simon & Trice, Lafayette, La., for applicant.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Teddy W. Airhart, Jr., Thomas W. McFerrin, Scallan E. Walsh, Asst. Attys. Gen., for respondents.

WEST, District Judge.

This is an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner is presently incarcerated in the Louisana State Penitentiary at Angola, Louisiana.

On November 19, 1954, petitioner was sentenced to ten years at hard labor in the Louisiana State Penitentiary pursuant to a jury verdict of guilty entered on October 23, 1954, on the charge of violating Title 40, Sec. 962 et seq. of the LSA–Revised Statutes of Louisiana, in that "he had in his possession certain quantities of narcotic drugs".

A full and complete hearing was held before this Court on this application, both on the pending motions filed by respondents and on the merits on November 2, 1961. In order to have a complete understanding of the issues involved, it is felt that a recounting of the history of prior proceedings in this matter, as reflected by a review of the record of the Trial

Court and the Appellate Court proceedings, is necessary.

The original trial of the petitioner on the charge of having possession of narcotic drugs began in the Nineteenth Judicial District Court for the Parish (County) of East Baton Rouge, State of Louisiana, on October 25, 1954. After presenting its evidence, the State rested its case at about 2:00 o'clock p. m. on October 27, 1954. During the entire presentation of the State's case, one Ford K. (Bobby) Dees, a witness under subpoena by the State was apparently present in the courtroom, and while he was so present in the courtroom, the defense attorney had him served with a subpoena on behalf of petitioner. The State had elected not to call Dees as a witness.

After the State rested its case, the first witness called by the petitioner was the said Ford K. (Bobby) Dees, but at that time, Dees was found to be not present. This was at about 2:00 o'clock p. m. on October 27, 1954. The Judge then recessed the Court until 4:00 o'clock p. m. and issued an order to have Dees picked up and brought into the Court pursuant to his subpoena. When the Court reconvened at 4:00 o'clock p. m., Dees was still missing, and thereupon the Court again recessed until 10:00 o'clock a. m. the following day, and a statewide pickup order was put out for Dees.

At 10:00 o'clock a. m. the following day, October 28, 1954, when the Court reconvened, Dees was still missing. At this time the petitioner filed a motion for a continuance, alleging that Dees was a witness necessary to his defense, and at the same time presented to the Court an eight page affidavit, previously executed before a Notary Public by Dees, the contents of which petitioner stated to the Court would be proved by him if Dees were present to testify, and that he would prove by Dees that he "framed" petitioner to the knowledge of and with the consent of the District Attorney and the officials of the State of Louisiana. Whereupon the attorneys for the State agreed to admit that if Dees were present, he would testify in accordance with the affidavit

presented by the petitioner. The Trial Court ruled that inasmuch as the State agreed to admit the affidavit into evidence, and inasmuch as the State admitted that the witness, if present, would testify in accordance with said affidavit, that the motion for a continuance must be denied under the well settled law of the State of Louisiana. Thereafter, the affidavit of Dees was filed in evidence and presented to the jury. No other witnesses were called by the petitioner, and after certain rebuttal evidence was produced by the State for the purpose of showing that Dees did not "frame" petitioner, and that the State did not knowingly use any perjured testimony, the State rested and the evidence was closed.

Thereafter, on October 28, 1954, the jury found petitioner "guilty as charged" and he was, on November 19, 1954, sentenced to serve ten years at hard labor in the State Penitentiary at Angola, Louisiana.

A motion for a new trial was then filed on November 18, 1954, and another supplemental motion for new trial was filed by the petitioner on the same day. Both motions were denied by the Trial Court.

An appeal was taken by petitioner to the Supreme Court of the State of Louisiana, and on March 21, 1955, the Louisiana State Supreme Court set aside the conviction and sentence and remanded the case for new trial. State v. Johnson, 228 La. 317, 82 So.2d 24.

In this decision the Court gave its reasons in detail for a reversal of the Trial Court. The Supreme Court of Louisiana pointed out that two bills of exception had been reserved by the petitioner on the trial of the case, and that the petitioner had also urged before the State Supreme Court that there is "error patent on the face of the record". Bill of exception No. 1, the Court stated, was leveled at the fact that the District Court, or Trial Court, allowed the District Attorney to change the date of the alleged offense at the commencement of the trial. Petitioner alleged that this was error. The Court held that under the settled law of Louisiana, the Court may allow an amendment

to the bill of information so long as the defendant can show no prejudice thereby. They held that since the Trial Judge had specifically given the petitioner an opportunity to show prejudice, and since the petitioner had failed to show any prejudice, the Trial Court properly refused a continuance and allowed the amendment made by the State to the bill of information. On this initial hearing on appeal before the Louisiana State Supreme Court, however, the Court held that bill of exception No. 2 was good and they set aside the conviction and sentence and remanded the case for a new trial. Bill of exception No. 2 had been leveled at the fact that the Court had allowed the State to introduce evidence of a violation of the Narcotic Statute on a date other than the date of the offense charged in the bill of information on the theory that the State was attempting to show intent, system and knowledge. The reason given by the Louisiana State Supreme Court for finding merit in this exception was that intent or motive were not necessary elements of the crime charged, and that consequently, it was error to allow the State to present evidence of violations other than the one charged in the bill of information.

However, a rehearing at the request of the State was then granted, and on June 30, 1955, the Supreme Court for the State of Louisiana reversed its prior position and held that intent, motive, or knowledge was an essential ingredient of the crime charged, and decreed that the conviction and sentence be affirmed. State v. Johnson, supra.

■ Since the Louisiana State Supreme Court specifically made mention in its opinion of the fact that the petitioner urged "defects" allegedly "patent on the face of the record", it is to be assumed that these contentions of the petitioner were considered by the Supreme Court of Louisiana. The mere fact that a specific and detailed disposition is not made by the Court in its written reasons of every contention urged by a petitioner before the Court cannot be construed to mean that such contentions were not considered

by that Court. Indeed, on the contrary, it should be assumed that the Court did consider all arguments and issues presented, absent specific showing to the contrary. Furthermore, a careful review of the record in this case does not reflect any "defects patent upon its face" insofar as this Court can determine.

On April 8, 1958, petitioner filed an application for a writ of habeas corpus in this Court, which was denied on the grounds that he had not exhausted his State Court remedies, citing authorities therefor. On April 25, 1958, the petitioner filed an application for a writ of habeas corpus with the United States Supreme Court, which was also denied. On May 22, 1958, petitioner filed application for a writ of habeas corpus with the original Trial Court, the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana. Exceptions to the jurisdiction of that Court were then filed by the State, and in November of 1958, the Louisiana Supreme Court ruled that the original Trial Court no longer had jurisdiction over this matter, but that the District Court in the Parish where the petitioner was incarcerated had jurisdiction over such habeas corpus proceedings. Petitioner then applied to the Twentieth Judicial District Court, Parish of West Feliciana, State of Louisiana, the parish where the State Penitentiary is located, for writs of habeas corpus, which were denied by that Court on June 13, 1958. He then applied again to this Court, the United States District Court for the Eastern District of Louisiana, for a writ of habeas corpus and on March 16, 1959, this application was denied with a per curiam stating that the application was denied for failure of the petitioner to exhaust his State Court remedies.

Petitioner again applied to the Twentieth Judicial District Court for the Parish of West Feliciana, State of Louisiana, and after hearing, on March 28, 1959, this application was also denied. He then applied to the Louisiana State Supreme Court from this denial, and also filed an original application for a writ of habeas corpus with that Court. On April 27,

1959, his appeal and application were denied. A motion for a rehearing was filed and was denied by the Louisiana State Supreme Court. No writs of certiorari to the United States Supreme Court were applied for in connection with this ruling of the Twentieth Judicial District Court for the Parish of West Feliciana, State of Louisiana, and the subsequent ruling of the Louisiana State Supreme Court. Thereafter, this present application for a writ of habeas corpus was again filed in this Court.

In connection with this present application, petitioner sought to produce some nine witnesses and numerous records and documents which, after careful deliberation and after diligent examination of the complete record of the proceedings in the original trial court and in the Louisiana State Supreme Court, this Court found to be unnecessary for a determination of the issues presented.

The application for writ of habeas corpus filed by petitioner in this case alleges very generally that his constitutional rights have been violated, and only a vague reference to his having been "framed" is contained in this application. However, to this application petitioner has attached many exhibits, copies of other pleadings, briefs, etc., which tend to give his version of how he alleges he was "framed". This application was apparently prepared originally by the petitioner himself without the aid of counsel. (However, it might be noted at this point that this petitioner for the past seven years, and during his various attempts to secure his release from the penitentiary, has been represented by at least six very able attorneys at different times during these proceedings.)

■ An amending and supplemental application was later prepared by able counsel presently representing the petitioner, and filed in this record, in which, as an additional grounds for issuance of the writ of habeas corpus, it is alleged that certain evidence used against petitioner at his trial was obtained "by illegal search and seizure", and hence was used in violation of his constitutional rights. Also, in the supplemental application, petitioner urges violation of the Civil Rights Statutes of the United States as set forth in 42 U.S.C.A. §§ 1981–1983, as grounds for warranting issuance of a writ of habeas corpus. On the oral argument heard before this Court in connection with this application, counsel for petitioner stated that violation of the Civil Rights Statutes had been urged only in the event that this Court were to deny a hearing on the writ for habeas corpus because of failure of the petitioner to exhaust his State Court remedies. Since a full hearing was granted on the merits of this matter, this issue of violation of the Civil Rights Statutes has no further application to this matter. In any event, this matter would not be proper subject for inquiry in a habeas corpus proceeding.

To the initial application, the State filed motions (1) to dismiss for failure to state a claim upon which relief can be granted; and (2) to dismiss for lack of jurisdiction for failure of petitioner to exhaust his State Court remedies, including application for writs of certiorari to the United States Supreme Court.

To the supplemental and amending applications for a writ of habeas corpus, the State filed a motion to dismiss for lack of jurisdiction on the grounds that the State Court remedies have not been exhausted, this being the first time, aside from the original trial, that the question of illegal search and seizure has been raised by petitioner.

■ Hearing on these various motions, and on the merits, was held before this Court on October 13, 1961, with both the State and the petitioner being ably represented by counsel. After extended arguments heard by this Court, the motion of the State to dismiss the amending and supplemental application of petitioner for a writ of habeas corpus was granted. It is well settled that absent special circumstances, before this Court must hear an application for a writ of habeas corpus, the applicant must exhaust his

remedies in the State Courts. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Darr v. Burford, 339 U.S. 200, 70 S. Ct. 587, 94 L.Ed. 761; Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572. While it is also settled that the District Judge has certain discretion insofar as exceptions to this rule is concerned, where special circumstances warrant; Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541, nevertheless the Court in this instance does not feel that special circumstances exist here such as to justify a deviation from the general rule insofar as this phase of the application is concerned. As is noted from the preceding history of these proceedings, ample opportunity has been available to the petitioner to raise this question of illegal search and seizure in the Appellate Courts of the State of Louisiana, and even though he now relies on the recent case of Mapp v. Ohio, 367 U.S. 556, 81 S.Ct. 1684, 6 L.Ed.2d 1081, to support his position, under the settled jurisprudence, he must first present this matter to the proper State Courts for adjudication before he can be heard in this Court on a habeas corpus proceeding.

■ As to the motion of the State to dismiss for failure to state a claim upon which relief can be granted, this Court felt that while the State might be technically correct, nevertheless, in the interest of justice, this motion should be and was denied. While the original application, or petition, did not on its face set forth with any degree of particularity the constitutional rights of petitioner allegedly violated as is ordinarily required, nevertheless, the Court felt the record, including exhibits, taken as a whole, did set forth the required facts. Attached to the original application (which as previously stated was apparently prepared by Johnson personally) were various copies of pleadings in other suits, "briefs", and other statements of petitioner in support of his application. These exhibits and "briefs" did state details of how petitioner claims his constitutional rights have been violated. In view of this, and taking cognizance of the fact that petitioner, as a layman, is in all probability not familiar with the niceties of artistic pleading, it is the opinion of this Court that the original application filed by petitioner, together with the exhibits attached thereto, did, if proved, state a cause of action upon which relief could be granted.

■ The third and last motion filed by the State was directed at the original application, and moved for dismissal for lack of jurisdiction. This motion was based upon the fact that the petitioner had never applied to the United States Supreme Court for writs of certiorari from the ruling of the Louisiana State Supreme Court in connection with the habeas corpus proceedings originally commenced in the Twentieth Judicial District Court for the Parish of West Feliciana, State of Louisiana. Hence, it is contended by the State that under the settled jurisprudence, an application for a writ of certiorari to the United States Supreme Court is a necessary part of State Court proceedings, and is a prerequisite to the right to file habeas corpus proceedings in this Court. There can, of course, be no quarrel with this position as a general rule and, as heretofore pointed out, this Court recognized that principle in connection with the amending and supplemental application filed herein. But this Court further feels that a different situation is presented here insofar as the original application is concerned. The issues presented therein have certainly been presented to the State Courts not once, but several times. Following the application for the writ of habeas corpus to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, petitioner applied for writs directly to the United States Supreme Court. Later, it was determined that the Nineteenth Judicial District Court had no jurisdiction, and new proceedings were immediately initiated by petitioner in the Twentieth Judicial District Court in the State of Louisiana. These were appealed to the Louisiana

Supreme Court, and a direct application for a writ of habeas corpus was also filed in that Court. While this Court feels that it has the discretion to grant the motion of the State to dismiss because of the failure of the petitioner to exhaust his State Court remedies, including application to the United States Supreme Court for a writ of certiorari, nevertheless, under the circumstances of this case, and in order to feel satisfied that petitioner has been given the full benefit of a complete review of his case by this Court, this motion to dismiss was denied in order that full consideration may be given by this Court to all of the contentions of the petitioner.

### On the Merits.

On the hearing of this matter before this Court, petitioner, through his very able counsel, presented five grounds upon which he based his contention that his constitutional rights had been violated, namely: (1) that he was convicted upon the basis of evidence that had been "planted" by one Ford K. (Bobby) Dees and was thus "framed" and that the attorneys for the State knowingly used this "fraudulently obtained" evidence; (2) that he was never properly advised of the charge against him due to a defect in the bill of information upon which he was tried; (3) that the appellate procedures of the Louisiana State Courts did not afford him a full consideration of his contentions, and thus, did not afford him due process or equal protection of the laws as required by the United States Constitution, Amend. 14; (4) that the record shows that the quantity of marijuana found in his possession was so small that it could only be seen microscopically, and that thus, as a matter of law, there was no evidence whatsoever upon which to base a conviction; and (5) that the evidence obtained and used against him was obtained by illegal search and seizure, and thus violated his constitutional rights.

After a most thorough and exhaustive review of the entire record of the State Court proceedings in this matter, and after having heard full and complete arguments of counsel for both petitioner and the State, and as a result of its own independent determination of the issues involved, this Court finds no merit to any of the various contentions of the petitioner for the reasons hereinafter set forth.

It is, of course, settled beyond argument that on habeas corpus hearings, the Court's inquiry is limited to a study of the undisputed portions of the record. All disputed facts come to the Court authoritatively resolved by the State's adjudication. U. S. ex rel. Townsend v. Sain, 7 Cir., 276 F.2d 324.

The United States District Court may not, on a petition for a writ of habeas corpus, usurp the function of the State Courts or the jury by determining de novo the guilt or innocence of a prisoner convicted under State process. The merits of the case are not to be considered, but only the facts which allegedly pose a constitutional question. U. S. ex rel. Fletcher v. Cavel, D.C., 183 F.Supp. 335. With these basic principles in mind, we proceed to a consideration of the various contentions of this petitioner.

1. The petitioner contends that he was convicted upon the basis of evidence which had been "planted" by one Ford K. (Bobby) Dees and was thus "framed", and that the State knowingly used this "fraudulently obtained" evidence. The Court finds no merit in this contention.

It might be noted that nowhere in petitioner's application for a writ of habeas corpus does he allege that the State *knowingly* used any evidence obtained as a result of a "frame". The State moved to dismiss this contention for that reason. However, out of an abundance of caution, this Court overruled that motion and decided to let the exhibits attached to the application serve to correct the defect in this application and thus allow the petitioner to be fully heard on this point. Whether or not this defendant was

"framed" was a matter of fact which was presented to the jury and decided adversely to the petitioner. During the trial of this case, wherein petitioner was represented by one of the leading criminal attorneys in this area, he tried to prove that he had been "framed". When, during his very lengthy cross-examination of one John A. Gjertsen, a narcotic agent with the Federal Bureau of Narcotics, defense counsel met with an objection from the State's attorney on the grounds of immateriality of evidence, defense counsel stated:

"The purpose of the question is, may it please the Court, to show that this man, in company with Dees, and in company with Sergeant Price, went to Thibodeaux and made a purchase of certain marijuana, certain narcotics, and that part of it was delivered to Dees with the instructions to take it and plant it at Ben Johnson's place, that's the purpose of it."

The trial court overruled the State's objection and allowed the defense to continue unhampered in their efforts to prove a "frame". (Transcript of Trial, page 106, et seq.) (It is also to be noted that this detailed explanation by defense counsel was made in the presence of the jury, which enabled the jury to have full benefit of the allegation of "frame" advanced by petitioner.)

After the State had concluded its case, the first witness called by the defense was Ford K. (Bobby) Dees, whom the defense had subpoenaed during the presentation of the State's case. He did not answer and could not be found. Court was recessed for about a day and a half while all efforts were made, including a statewide pickup order issued by the State Police to locate Dees. The defense then moved for a continuance and presented an eight page affidavit previously executed before a Notary Public by Dees, which they contended they could prove if Dees were a witness. Whereupon the State immediately agreed to and did stipulate that if Dees were called as a witness, he would testify precisely in accordance with the affidavit, without, of course, admitting the truth of the statements contained in the affidavit. The Trial Judge then instructed the jury as follows:

"Gentlemen of the jury, when a defendant prays for a continuance of a criminal case because of the absence of a material witness and complies with the law in making such a request, the State may oppose the continuance and insist that the trial be proceeded with provided the State admits that if the witness were present he or she would testify as alleged in the motion for continuance, without admitting, however, the truthfulness of the testimony it is claimed the absent witness would give if sworn and present in Court. Considering the admission by the State that if present, the absent witness, Dees, would testify as set out in the motion for continuance, the motion for continuance is denied, your being specifically instructed that the State does not admit the truthfulness of the alleged statements by the said witness."

The affidavit was then filed in evidence and read in full to the jury. No bill of exception was reserved at this time to the denial by the trial court of the motion for continuance.

This affidavit stated, in essence, that he, Dees, had been hired by the Louisiana State Police Department and the Federal Bureau of Narcotics agent to try to make a case against the petitioner, Johnson, but that he had been unable to do so. After this affidavit was introduced in evidence and presented to the jury, the petitioner, without calling any other witnesses, rested his case.

In rebuttal, the State called Colonel Francis C. Grevenberg, Superintendent of the Louisiana State Police, Sergeant Martin Fritcher, Robert M. Walker, and Leon K. Price, all employed by the Louisiana State Police Department, and again called J. A. Gjertsen, of the Federal Bureau of Narcotics. Each of these wit-

nesses were examined and extensively cross-examined by defense counsel, specifically in connection with the statements contained in Dees affidavit. The jury apparently resolved this dispute concerning the alleged "frame" against the petitioner. Thus, insofar as the petitioner claims that he was "framed" to the knowledge of the State's attorneys, this is a mere disputed fact, resolved by the jury, after extensive presentation of evidence, against the petitioner and this Court cannot, on a habeas corpus hearing, inquire into that disputed matter.

 Insofar as the petitioner claims that he was unable to have the witness Dees personally in Court and before the jury, this Court finds no violation of his constitutional rights in that respect. A subpoena was issued to this witness at the request of the petitioner, and when the witness failed to appear following the presentation of the State's case, every possible effort was made by the Court to have the witness located and produced in Court, including the issuance of a state-wide pickup order. Then, when the witness could not be located, the petitioner presented to the Trial Court written evidence in the form of a notarized affidavit signed by the absent witness, setting forth what he contended this witness would testify to if he were presented in Court. The State agreed to admit this affidavit in evidence as hereinbefore set forth. No bill of exceptions was reserved by the petitioner at this time to the Court's ruling. Certainly compulsory process was had by the petitioner inasmuch as the witness requested by him was subpoenaed and every effort was made to produce this witness in Court. While a guarantee of compulsory process for obtaining a witness means that the accused is entitled, as a matter of right, to invoke the aid of the law to compel the personal attendance and actual presence of a witness at his trial when their presence is obtainable, nevertheless, it does not amount to a guarantee of actual attendance of such witness, and the fact that despite all efforts being made, the witness is still absent at the time of the trial, this absence does not show a denial of any constitutional right of the defendant. 97 C.J.S. Witnesses § 10, and cases cited thereunder. A careful reading of the record in this case fails to disclose that the petitioner's constitutional rights in this respect were in any way violated, and furthermore, it is quite apparent from the reading of this record that even had the witness Dees been available, his testimony would have amounted only to further evidence in connection with a highly disputed fact, the outcome of which would not have been subject to review by this Court on a hearing for a writ of habeas corpus.

 2. Petitioner urges as his second ground for complaint that he was never properly advised of the charge against him due to a defect in the bill of information on which he was tried. This Court finds no merit to this contention. Whether an offense is sufficiently alleged in an indictment or bill of information is not a proper subject matter for inquiry on habeas corpus. Ex parte Webb, 225 U.S. 663, 32 S.Ct. 769, 56 L.Ed. 1248; Redmon v. Squier, 9 Cir., 147 F.2d 605, certiorari denied 325 U.S. 864, 65 S.Ct. 1198, 89 L.Ed. 1985. Jurisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged. It is well settled that a criminal prosecution in the Courts of this State, based on a law not in itself repugnant to the Federal Constitution, and conducted according to the usual course of judicial proceedings as established by the laws of the State, so long as it includes notice, a hearing, or an opportunity to be heard before a court of competent jurisdiction and according to established modes of procedure is "due process" in the constitutional sense. Knewel v. Egan, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036, Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969.

Furthermore, the record in this case clearly shows that this issue was squarely

presented by the petitioner to the Louisiana State Supreme Court on appeal, and that the Court found that under the criminal laws of the State of Louisiana there was, in fact, no defect prejudicial to the defendant in the bill of information upon which he was tried. There is nothing in the Louisiana criminal laws involved that this Court would hold to be repugnant to the United States Constitution.

3. The petitioner next urges that the appellate procedures of the Louisiana State Courts did not afford him a full consideration of his contentions, and that thus, did not afford him "due process of law" or "equal protection of the law" as required by the United States Constitution. And again this Court finds no merit in this contention.

 During the course of this trial, defense counsel reserved only two bills of exception. The first was leveled at the fact that the District Attorney was allowed by the Court to change the date on the alleged offense from "on or about the 7th day of October, 1953" to "on or about the 6th day of October, 1953". The second bill of exception was leveled at the fact that the Court allowed the State to introduce evidence that the petitioner had possession of marijuana on a date other than that on which the offense is charged for the purpose of showing intent, system, and knowledge on the part of the accused. These are the only bills of exception reserved during the trial. Later, after conviction, the petitioner filed a motion for a new trial based on the allegation that if the witness Dees were present personally to testify, the jury would find petitioner not guilty. When the new trial was refused, another bill of exception was reserved. However, this bill of exception was never urged before the Supreme Court of Louisiana on either the original appeal or on the rehearing before that Court. Both of the bills of exception presented were thoroughly reviewed by the Louisiana State Supreme Court and were resolved against the petitioner. It was after this that the petitioner then attempted to obtain another hearing before

the Louisiana State Supreme Court to consider the refusal of the Trial Court to grant a new trial. A second rehearing was denied pursuant to the rules of procedure of the Louisiana State Supreme Court. The petitioner could have and should have urged this third bill of exception, had he thought there was merit to it, before the Supreme Court of Louisiana on the first appeal or on the rehearing. By his failure to urge this exception timely, he has waived whatever constitutional rights he might otherwise have had. Ex parte Mainello, 2 Cir., 184 F.2d 845; Buhler v. Pescor, D. C., 63 F.Supp. 632. He cannot come into this Court on a habeas corpus proceeding and obtain thereby a rehearing or another appeal from his original trial. Sunol v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982; United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232; Wooten v. Bomar, 6 Cir., 267 F.2d 900. But even in spite of this, and as heretofore set forth, the Court does not believe that the question of whether or not Dees should have testified personally is a proper matter of inquiry on this habeas corpus proceeding. Thus this Court finds that there is no merit in this contention of the petitioner. The appellate procedures afforded him were available and adequate and were in accordance with "due process" in the constitutional sense. The mere fact that he did not timely avail himself of this procedure does not constitute a violation by the Court of his constitutional rights.

 4. The fourth grounds of complaint set forth by the petitioner at the hearing before this Court was that because of the fact that the quantity of marijuana found on the defendant was microscopically small, that it in fact, and as a matter of law, amounted to no evidence whatsoever upon which a conviction could be based. This is not a matter for review on a habeas corpus hearing. The record is clear that the amount of narcotic found on the petitioner was a disputed matter of fact, and, as a matter of fact, the jury found that petitioner had

marijuana in his possession, contrary to the laws of the State of Louisiana, and he was thus convicted. Whether or not there was evidence to support a guilty verdict against petitioner involves the question of his guilt or innocence and is a question with which this Court may not concern itself on a habeas corpus proceeding. United States ex rel. Bongiorno v. Ragen, 7 Cir., 146 F.2d 349; certiorari denied 325 U.S. 865, 65 S.Ct. 1194, 89 L.Ed. 1985; Wright v. Brady, 4 Cir., 129 F.2d 109. Thus, there is no merit to this contention.

■ 5. And lastly, the petitioner complains that the evidence used against him was obtained by an illegal search and seizure, and thus violated his constitutional rights. Since this question is now raised for the first time, since his original trial, the motion of the State to dismiss this claim for lack of jurisdiction was granted. However, in passing, it will be noted that on the trial of this case, the question was thoroughly explored before the jury, and it was found, as a matter of fact, that petitioner had consented to the search and seizure now complained of. Defense counsel objected to the testimony on this point and was overruled by the Court, and then reserved the bill of exception to the ruling. (Transcript of trial record, page 83, et seq.) However, this bill of exception was never urged on appeal or otherwise before any appellate court in Louisiana, and was not urged by petitioner until it was presented here at this hearing for the first time. Hence, petitioner has completely failed to exhaust his State Court remedies as to this issue and in all probability has waived any constitutional rights that he otherwise might have had for failure to timely urge this exception.

Thus, after an exhaustive review of the record in this case, and after hearing complete and thorough arguments herein, this Court finds from its own independent examination that the petitioner herein has not been deprived of his constitutional rights, and thus, for the foregoing reasons, the writ of habeas corpus is denied. ■