**UNITED STATES ex rel. Thomas C. COOPER**

v.

**Frederick G. REINCKE, Warden, Connecticut State Prison.**

Civ. A. No. 9563.

United States District Court
D. Connecticut.

June 27, 1963.

Walter B. Schatz, Schatz & Schatz, Hartford, Conn., for petitioner.

Harry Hagel, Sp. State's Atty., Middlesex County, Middletown, Conn., for respondent.

CLARIE, District Judge.

■■ The petitioner is an inmate of the Connecticut State Prison, having been convicted by a jury of the crime of conspiracy, § 54–197 of the Connecticut General Statutes, Revision of 1958, for which he was sentenced on November 24, 1959 to be imprisoned not less than four nor more than eight years. He has exhausted his state remedies under 28 U.S.C.A. § 2254 in that he appealed his conviction to the Connecticut Supreme Court of Errors and the conviction was affirmed on July 19, 1962; State of Connecticut v. Devine et al., 149 Conn. 640, 183 A.2d 612. Thereafter, the United States Supreme Court denied certiorari; Cooper v. Connecticut, 371 U.S. 930, 83 S.Ct. 303, 9 L.Ed.2d 237 (December 3, 1962). This Court has jurisdiction. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (March 18, 1963).

This Court granted the petitioner's request to proceed in forma pauperis; appointed counsel to represent him and ordered that a complete transcript of all relevant proceedings in the state courts be furnished without charge to petitioner's counsel preparatory to a hearing on the merits. This included not only the trial transcript, but also the transcripts of multiple habeas corpus hearings, wherein relief was denied in the state courts.

Thomas C. Cooper was one of three defendants convicted by a jury on an information[1] charging them with the crime of conspiracy to commit larceny. He was arrested in the State of New York on a charge of being a fugitive from justice from the State of Connecticut and with having committed therein the offense of grand larceny. He waived extradition and voluntarily consented to return to the State of Connecticut. When he was first arraigned before the Trial Justice Court in the Town of Essex, Connecticut, at his request he was granted a continuance in order to retain counsel; and bond was set at $10,000.00. Two such continuances were granted, before a probable cause hearing was actually held. In the meantime, he attempted to make arrangements to retain private counsel of his own choosing, but was not successful. At that time, the State of Connecticut had a public defender system designed to represent indigent accused criminals; however, except in cases involving capital crimes or treason, their duties did not include representation at preliminary arraignments in the lower courts, but only at the actual trial on the merits.

Cooper waived examination at the preliminary hearing, without the benefit of counsel, probable cause was found by the

[1]. "Bernard A. Kosicki, State's Attorney, within and for said County, accuses John S. Devine and Thomas C. Cooper, both of New York City, New York, and Robert F. Smith, of Indianapolis, Indiana, of the crime of conspiracy, in violation of Section 54–197 of the General Statutes of Connecticut, Revision of 1958, in that they did conspire, on divers dates between on or about June 7, 1959, and July 17, 1959, to commit the crimes of breaking and entering, and of larceny, in violation of Sections 53–76 and 53–63 of said General Statutes, Revision of 1958; and in particular, that they did conspire to commit said crimes against The Connecticut Light and Power Company, at Essex, Connecticut, by breaking and entering a building in the possession of said company, used as a place for the custody of property, and to steal therefrom copper wire belonging to said company, in violation of said Statutes; and in pursuance of said conspiracy, at divers times between on or about June 24, 1959, and July 16, 1959, they did break and enter a building in the possession of The Connecticut Light and Power Company, at Essex, Connecticut, with intent to commit a crime therein; and in further pursuance of said conspiracy, did steal from said premises goods or chattels belonging to said company, and in particular, copper wire of the value in the aggregate of more than $2,000; and the said accused stand informed against for said crimes and violations of the Statutes aforesaid."

Court and he was bound over to the Superior Court for trial. No evidence was offered at the preliminary hearing by the State nor did the defendant Cooper, make any confession, or admission, or do any act prejudicial to his case; he pleaded not guilty to both counts of the complaint [2] at the arraignment.

Thereafter, at Cooper's request, Richard Parmelee, the official public defender for Middlesex County, assumed the duties as his defense counsel. Because of possible conflict of interest between the rights of Cooper and the other two defendants, separate special counsel were appointed by the Court to represent each of the others. Cooper and the other two defendants were tried on the charge of conspiracy in violation of § 54–197 [3] of the Connecticut General Statutes, Revision of 1958, in that they conspired between June 7, 1959 and July 17, 1959 to commit the crimes of breaking and entering and of larceny in violation of §§ 53–76 [4] and 53–63 [5] of said statutes and that in furtherance of the conspiracy they

2. "To George I. Lancraft, Esq., Trial Justice, * * * in and for the Town of (Essex) comes Francis McGrath, a Prosecuting Grand Juror * * *, in and for said Town, and on his oath of office complaint and information makes That, at said Town of Essex on the 15th day of July, 1959, Thomas C. Cooper of 327 W. 56th Street, New York, N. Y. with force and arms, did willfully and feloniously take, steal and carry away from the Conn. Light & Power and out of the possession of same goods and chattels of the said Conn. Light & Power Co. or the proper owner in violation of Section 53–63 of the 1958 Revision of the General Statutes of the State of Connecticut.

"Said Grand Juror further complains that at said town of Essex on the 17th day of July, 1959 the said Thomas C. Cooper with force and arms did attempt to willfully and feloniously take, steal and carry away from the Conn. Light & Power Co. and out of the possession of same, goods and chattels of the said Conn. Light & Power Co., or the proper owner, in violation of Section 53–63 of the 1958 Revision of the General Statutes of the State of Connecticut.

"The value of said goods and chattels so taken by said Defendant exceeded two thousand dollars in value."

3. "Any person who combines, confederates or agrees with another or others to accomplish any unlawful object by lawful means, or other lawful object by unlawful means, or any unlawful object by unlawful means, if one or more of such persons do any act in furtherance of such combine, confederation or agreement, shall be fined not more than five thousand dollars or imprisoned not more than fifteen years or both, provided, if the crime which is the object of such combination, confederation or agreement is a misdemeanor, such person shall be subject to the same penalty as is provided by statute for the commission of the misdemeanor. No officer or member of any lawful organization shall be held liable for the unlawful acts of individual officers, members or agents of such organization except upon proof of participation in or authorization of such acts or of the ratification thereof."

4. "Any person who, with intent to commit any crime therein, breaks and enters any building or vessel, or any motor vehicle, in the possession of another used as a place for the custody of property, or any building used as a place of instruction or of public worship, shall be imprisoned not more than four years."

5. "Any person who steals any money, goods or chattels, or any bill issued by any state bank or national banking association, or any deed, lease, indenture, bond, writing obligatory, bill of exchange, promissory note, warrant or order for the payment of money or delivery of goods, receipt or discharge, or any book account or other writing being evidence of debt, adjustment or settlement, if the value of the property stolen exceeds two thousand dollars, shall be imprisoned not more than twenty years or fined not more than one thousand dollars or both; if it exceeds fifty dollars but does not exceed two thousand dollars, he shall be imprisoned not more than five years or fined not more than five hundred dollars or both; if it does not exceed fifty dollars but exceeds fifteen dollars, he shall be fined not more than one hundred dollars or imprisoned not more than six months or both; if it does not exceed fifteen dollars and the property is goods or chattels offered or exposed for sale, he shall be fined not more than one hundred dollars or imprisoned not more than sixty days or both, or, if the property stolen is other than such goods or chattels, he shall be fined not more than twenty-five dollars or imprisoned not more than thirty days or both."

stole copper wire in the aggregate of more than $2,000.00.

The court instructed the jury that the state had failed to prove a conspiracy to commit the crime of breaking and entering but had offered evidence which tended to prove conspiracy to commit larceny. The jury brought in a verdict of guilty as charged. A judgment was accordingly drawn by the Clerk of the Court, wherein the crime of which the petitioner was convicted and imprisoned was described as conspiring to commit larceny in excess of $50.00, which latter minimum amount classified the crime in the category of a felony.

The petitioner immediately indicated his intention to appeal the conviction. After conferring with Cooper's counsel, who indicated that in his opinion there was no valid ground for appeal, the court ordered that the public defender file a formal appeal, so that the usual appeal bond, the attendant filing fees and the cost of transcript would be borne by the State. The trial judge then directed that except for the foregoing, the public defender would not prepare the usual papers and that if the petitioner desired an appeal, the necessary documents would have to be prepared by himself.

The request for counsel to assist in the preparation of the appeal was renewed by the petitioner by correspondence addressed to the court, but the request was denied.

After Cooper had prepared his own request for draft findings, assignments of error, and appeal brief, he appeared in person before the Connecticut Supreme Court of Errors on June 27, 1961, the day designated to argue the appeal, and he orally renewed his request for the assistance of counsel. The Supreme Court then referred the case back to the Middlesex County Superior Court for assignment of counsel, and on the same date the latter court designated the newly-appointed official public defender of Middlesex County as Cooper's counsel, with direction that he assume responsibility for Cooper's appeal.

The new public defender reviewed the case, prepared his own appeal brief and adopted the assignments of error originally prepared and filed by the petitioner. At the hearing on the appeal before the Connecticut Supreme Court of Errors on May 4, 1962, the Court had before it petitioner's assignments of error, the appeal brief of counsel and typewritten copies of Cooper's appeal brief; the latter not being in printed form, because its length exceeded the page limitation according to the procedural rules. Nevertheless, the Chief Justice orally advised counsel that the entire record including that part prepared by the petitioner himself, together with the brief of counsel would be considered by the Court in its deliberations and in the adjudication of the case. Petitioner's request through his attorney, to be present at the arguing of his appeal was denied by the Court and the matter was presented and argued by counsel. On July 19, 1962, the State Supreme Court of Errors affirmed the petitioner's conviction in a unanimous decision and certiorari was denied by the United States Supreme Court.

In this habeas corpus petition, Cooper has assigned many grounds, which he claims are violations of his constitutional rights. The Federal Statute on which his petition is made, 28 U.S.C.A. § 2241 (c) (3) provides in part:

"(c) The writ of habeas corpus shall not extend to a prisoner unless— * * * (3) He is in custody in violation of the Constitution or laws or treaties of the United States."

The Court will consider petitioner's claims insofar as they relate to the constitutionality of his incarceration. Irvin v. Dowd, 359 U.S. 394, 404–405, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959).

■ Cooper's first claim, in the order of sequence of his prosecution, is that he was tricked or fraudulently induced to waive extradition in the State of New York and consent voluntarily to return to Connecticut. He was originally arrested as a fugitive from Connecticut on a charge of grand larceny and subsequently

charged and tried in Connecticut on a charge of conspiring to commit the crime of larceny. He represents that had he known he was to be so charged, he would not have waived extradition and returned voluntarily; that he was thus deprived of due process. This contention is without merit. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). Both of these cases involved actual physical abduction by the state authorities in order to get the accused within the court's jurisdiction.

> "There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice, because he was brought to trial against his will." Frisbie v. Collins, supra, 342 U.S. 522, 72 S.Ct. 512, 96 L.Ed. 541.

The manner of acquisition of this jurisdiction is immaterial. Chapman v. Scott, D.C.Conn., 10 F.2d 156, aff'd 10 F.2d 690, cert. denied 270 U.S. 657, 46 S.Ct. 354, 70 L.Ed. 784 (1925).

Petitioner claims further that he was deprived of due process and his constitutional rights, when he was arraigned in the Trial Justice Court and bound over for trial in the Superior Court, because he was an indigent and not then represented by counsel.

There was no material evidence to indicate that anything occurred at this preliminary arraignment, which prejudiced the petitioner so as to affect the subsequent trial and conviction. His counsel, in reply to the question, "Were you prejudiced or handicapped, or was your trial of the case representing Cooper made more difficult by the fact that he (Cooper) had not had counsel before the Justice Court and had waived examination?" testified: "I did not feel that he had been handicapped in any way whatsoever." Lack of counsel during this period without a showing of prejudice is not enough to invalidate the subsequent conviction.

> " * * * state refusal of a request to engage counsel violates due process not only if the accused is deprived of counsel at trial on the merits * * * but also if he is deprived of counsel for any part of the pretrial proceedings, provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' * * * The latter determination necessarily depends upon the circumstances of the case." Crooker v. California, 357 U.S. 433, 439, 78 S. Ct. 1287, 1292, 2 L.Ed.2d 1448 (1958). See also, United States v. Aviles, 274 F.2d 179, 193 (2 Cir., 1960); Odell v. Burke, 281 F.2d 782, 786 (7 Cir., 1960), cert. denied 364 U.S. 875, 81 S.Ct. 119, 5 L.Ed.2d 96 (1960).

The more recent case cited by petitioner's counsel, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, (March 18, 1963) does not do violence to the essential principles and conditions laid down in the Crooker case; rather it strengthens and sustains it.

The petitioner has not offered any evidence nor assumed the burden of proving to this Court how he was prejudiced; neither is there evidence that any prejudice resulted. The mere naked assertion alone, does not sustain such burden.

Only if we were to assume, that because at the time of arraignment on the bind-over process, the petitioner was charged with the substantive crime of larceny, rather than the crime of which he was subsequently convicted, conspiring to commit larceny; and that the state might not have had sufficient evidence in its possession at that time to prove probable cause of the commission of such crime could one conclude that counsel might have benefited the accused; only then could any argument of prejudice be advanced. The petitioner presented no such evidence at this hearing. The proof of facts in the ultimate trial transcript against Cooper would have provided ample evidence to sustain the petitioner's conviction of the substantive crime of larceny. See Conn.Gen.Stat. (Rev.1958)

§ 54–196. Certainly there was sufficient evidence to sustain a finding of probable cause on this count to justify a bind-over.

It is significant to note that petitioner's trial counsel testified at this hearing, that his client's case was not in any way prejudiced by his not being represented at the preliminary bind-over hearing and the Court finds this to be a fact.

The petitioner attributes to his counsel, the public defender, multiple procedural, tactical and legal errors during the trial which were prejudicial to the conduct of his defense. He claims that his counsel was both incompetent and mentally ill at the time he represented him and petitioner was thus denied a fundamental right essential to a fair trial.

The public defender was tried in the Federal Court in 1960 and convicted of willful failure to file income tax returns. It was a part of the defense, through testimony of Dr. Smith, that he was an extremely unstable, vacillating type of individual on or about April 15, 1958 and at times was not able to fully comprehend and grasp his full surroundings, because he was emotionally distressed. The psychiatrist who testified as a defense witness in the tax case appeared in this matter as a witness for the petitioner. The public defender waived any patient-psychiatrist privilege under Conn.Gen.Stat. § 52–146(a). The doctor expressed his professional opinion that the condition he found in 1958, probably continued for several years, which would encompass the period of the trial in the Fall of 1959. However, it was his opinion that the emotional upset was not of such a nature as would affect his ability as a trial counsel. There was no material evidence that would support a conclusion that this condition interfered with or in any way harmed the petitioner's defense.

Petitioner's claims of counsel's incompetency were particularly directed at his having advised him that out-of-state witnesses could not be subpoenaed for his defense. The public defender admitted that he had mistakenly so advised him. See Conn.Gen.Stat. (Rev.1958) § 54–22.

There were three witnesses specifically named by Cooper to his attorney who were out of state, namely, Burton Melcher, the New Jersey scrap metal dealer, petitioner's 12-year-old daughter, and his wife. The other witnesses mentioned were bartenders, elevator operators, bellhops and the like whose names at the time he did not specify or who were not readily identifiable.

Melcher, did appear, however, and testified as a prosecution witness. Counsel contacted Mrs. Cooper in New York and was advised that she did not want the daughter to appear in Court and that her own testimony would not be of any help. Subsequently, while the case was on appeal to the State Supreme Court, the new public defender, Mr. Larson, went to New York and talked with the daughter. He testified that her testimony did not substantiate the facts Cooper claimed it would. Petitioner's trial counsel also testified, that at the time of the trial he had telephoned several of the potential witnesses suggested by Cooper, the specific names of which he could not now remember, and appraised Cooper of the results of their conversations. In each instance, it was determined that such witness would not be of aid in Cooper's defense. It was the attorney's recollection that the petitioner usually agreed with him in these decisions.

The petitioner, while in prison, has been writing to persons, whom he believes might have been defense witnesses. Among these, one was a bank employee at the Union County Trust Company in Jersey City, New Jersey, another a Western Union employee. The former, it is alleged would have testified to the cashing of a check at the bank and the latter to the sending of a telegram at Western Union, both at a time which approximated his allegedly leaving a motel at Norwalk, Connecticut. It is Cooper's claim that this inconsistency unexplained, generally affected the jury's disbelief in his general veracity.

**740**

██ ██ The Court finds that this issue is but a trivial peripheral issue which could not reasonably have had any tangible effect upon the evidence disclosed in the record. The petitioner has failed to assume the burden of proving that the testimony of the witnesses, which he claims should have been subpoenaed to testify would have had any probable effect on the outcome of his trial. This Court finds after reviewing the trial transcript and the evidence that the petitioner was represented at the time of his trial by competent counsel.

██ Cooper challenges the state's withdrawing the original information and substituting therefor the conspiracy information. There is ample Connecticut authority holding such a procedure valid. See State v. Pritchard, 35 Conn. 319 (1868). The sufficiency of the information and matters related thereto are to be decided upon State law and it is not a proper subject matter for inquiry in a federal habeas corpus proceeding. Johnson v. Walker, 199 F.Supp. 86, 95 (E.D.La.1961). Ex parte Webb, 225 U.S. 663, 674, 32 S.Ct. 769, 56 L.Ed. 1248 (1912); Redmon v. Squier, 147 F. 2d 605, 606 (9 Cir., 1945) cert. denied 325 U.S. 864, 65 S.Ct. 1198, 89 L.Ed. 1985. The defense counsel was not taken by surprise by the substitution of the criminal information of conspiracy. He testified that the State's Attorney as a matter of policy permitted him to look at all evidence in advance of trial in this case and other cases, with the exception of capital crimes.

The petitioner further claims that he was denied the assistance of counsel in perfecting his appeal to the State Supreme Court and that he was thereby denied due process of law. The record does disclose that at the origin of his appeal the trial judge did deny him assistance on the grounds that his appeal was frivolous.

██ If nothing further was done to correct this denial of due process, it would constitute reversible error. Douglas v. California, 372 U.S. 353, 83 S.Ct.

814, 9 L.Ed.2d 811 (March 18, 1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (March 18, 1963); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (March 18, 1963).

However, at the time of his appearance before the State Supreme Court in June 1961, his case was referred back to the Superior Court (trial court) with direction that counsel be appointed to represent him. The newly appointed public defender, Mr. Larson, then assumed responsibility as Cooper's legal counsel in the preparation of his appeal.

Cooper had at the time of counsel's appointment already prepared his assignments of error for appeal and these were reviewed and adopted by counsel in their original form. They ran the gamut of every step of the proceedings from the moment he was apprehended in New York, through his sentencing and claimed denial of timely appointment of counsel on appeal. His appellate brief covered all of these assignments of error. However, counsel's brief argued only three basic points, which to him were the only ones worthy of merit and contained potential grounds of success. The petitioner claims that he was incompetently represented on the appeal, because counsel's brief and oral presentations did not argue all of the assignments of error which petitioner had claimed.

██ As has been previously noted, counsel testified that the Chief Justice stated at the argument of the appeal, all points raised in the petitioner's assignment of errors, and his typewritten brief, as well as counsel's printed brief would be considered by the Court. We must assume that such was done. The complete trial transcript was available to counsel in the preparation of his appeal and he testified that his appeal was in no way hampered by the state of the record as prepared by the petitioner; it was sufficiently broad so as to encompass all of the issues considered by him to be relevant. See Hearing Transcript, pages 378, 379. In fact, counsel requested that the Court accept the brief prepared by

the petitioner as primary and his own as secondary.

"The mere fact that a specific and detailed disposition is not made by the Court in its written reasons of every contention urged by a petitioner before the Court cannot be construed to mean that such contentions were not considered by that Court. Indeed, on the contrary, it should be assumed that the Court did consider all arguments and issues presented, absent specific showing to the contrary." Johnson v. Walker, 199 F.Supp. 86, 90 (E.D.La.1961).

The well planned paradox of the petitioner's position in this respect becomes apparent. He claims he was denied his constitutional right to competent counsel at trial and on appeal; while on the other hand when competent counsel is made available, he demands the right to direct his counsel's legal efforts. Failing in either direction, it is the fault of the state and his constitutional rights to due process are claimed to have been violated. Such a philosophy, if adopted, could well become a Pandora's box for indigents in the toils of the law, for whom court appointed counsel are made available. They would be in a better tactical position than those who retained counsel at their own expense.

An average criminal appeal to the State Supreme Court normally takes about six (6) months; the petitioner's took eighteen (18) months. Much of this delay was due to the state court's delinquent appointment of counsel to assist in preparing the appeal; and in some degree to counsel's procrastination after his appointment. While this defect, as a common practice, should be censured and condemned, no real harm has been actually sustained by the petitioner in the light of the State Supreme Court's ultimate disposition affirming the conviction and the findings of this Court. The petitioner's sentence commenced on the date of imposition, not from the date the appeal was decided. Conn.Gen.Stat. (Rev.1958, Supp.1959) § 54–95. See Hearing Transcript page 381.

Cooper claimed that his rights were also prejudiced by allowing a juror to be impaneled who was the wife of a police commissioner in the city where the trial was conducted, who was acquainted with several members of the city police and with the county investigator. Her husband was a member of the police committee of the city council, a legislative position. This juror was one of a great number of jurors inquired of on an individual voir dire examination and testified that she would be impartial. It might be added that she was also a personal acquaintance of the petitioner's counsel and he believed she would be a good juror. She was accepted by each of the three counsel for the several defendants.

"The affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside." Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961).

"After accepting them (jurors) before trial, he could not challenge them successfully in a motion for a new trial." Frazier v. United States, 335 U.S. 497, 513, 69 S.Ct. 201, 210, 93 L.Ed. 187 (1948).

The petitioner claims that his constitutional rights have been violated, because the information on which he was convicted failed to adequately inform him of the exact offense with which he was charged. The information in the instant case charged a conspiracy to commit larceny in violation of the Connecticut General Statutes, § 53–63, and that in pursuance of said conspiracy (the defendants) did steal copper wire of the value in the aggregate of more than $2,000.00.

"Section 53–63, as it read at the time of the defendants' conspiracy, fixed penalties which made a theft of property valued in excess of $50 a felony, and a theft of property of the value of $50 or less a misdemeanor.

See General Statutes § 1–1. Section 54–197, relating to conspiracy and cited in the information, states specifically that if the crime which is the object of the conspiracy is a misdemeanor, the penalty shall be that provided for the commission of the misdemeanor. The information here, by alleging the acts done in furtherance of the conspiracy, together with the value of the property stolen, clearly charged a conspiracy to commit a felony. The information was sufficient in law." State v. Devine, 149 Conn. 640, 648, 183 A.2d 612, 616 (July 19, 1962).

This Court concurs in the state court's finding. Not only did the information appraise the petitioner adequately of the charge, but it was clearly sufficient to protect him from double jeopardy against any charge of conspiracy in the future related to the larceny of the goods in question, during the period alleged in the information. United States v. Seeger, 303 F.2d 478, 482 (2 Cir., 1962) ; United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588 (1875).

■ Cooper further claims that the admission in evidence of the confessions of the two alleged co-conspirators made at a time when the alleged conspiracy had terminated, violated his constitutional rights. A review of the court's instructions to the jury on this item indicates that the court provided the petitioner with sufficient protection. Delli Paoli v. United States, 352 U.S. 232, 243, 77 S.Ct. 294, 1 L.Ed.2d 278 (2 Cir., 1957).

This Court concurs with the Connecticut Supreme Court in its findings:

"An examination of the entire transcript of the trial discloses ample support in the evidence, independent of the confessions, to prove Cooper's participation in the conspiracy beyond a reasonable doubt." State v. Devine, supra at 651, 183 A.2d at 617.

■ Cooper complains that his counsel's failure to move for a change of venue, after he had requested him to do so, was prejudicial to his case. The petitioner's request was based upon a news article printed in a Hartford paper, which had extensive circulation in Middlesex County where the trial occurred. This news article purported to quote one of the police officers, who investigated the case and recited acts which indicated Cooper's being involved.

A complete review of the voir dire transcript did not indicate that this article caused any prejudice. Counsel testified that such a motion was not made, because in his opinion there were no adequate legal grounds to warrant it being granted. United States v. Smith, 306 F. 2d 596, 601–604 (2 Cir. July 17, 1962).

■ Cooper further complains that his constitutional rights were infringed because he was not present in Court when the motion to set aside the jury's verdict was argued by his counsel and also when his final appeal was similarly argued before the State Supreme Court.

"The underlying principle gains point and precision from the distinction everywhere drawn between proceedings at the trial and those before and after. Many motions before trial are heard in the defendant's absence, and many motions after trial or in the prosecution of appeals * * *. So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 107–108, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934).

This Court finds in neither instance cited in this case was the petitioner deprived of a fair and just hearing by his physical absence.

■ Several other claims have been recited by Cooper, which he alleges were a violation of due process under the Fourteenth Amendment to the Federal Constitution. At the time of his arrest in New York, he claims that his driver's

license, a chauffeur's button, a trailer receipt, and his wallet were taken from him without a search warrant. At the trial these items were introduced as evidence against him. The record discloses that when they were offered, Cooper's counsel affirmatively stated that he had no objection. See Hearing Transcript, pages 129–131.

■ Cooper also claimed that his inability to sit at the table with counsel during the trial and readily communicate with him prevented his getting a fair trial. His attorney testified, however, that Cooper sat three to six feet to his rear and he would whisper or indicate, when he wanted counsel's attention. See Hearing Transcript, pages 168–169. While the seating arrangement may not have been ideal, reasonable access to counsel was available; it was not such as to be prejudicial to the petitioner's receiving a fair trial.

■ Petitioner complains that he was held in excessive bail prior to trial and no attempt was made by counsel to stay sentence and request a new appeal bond after conviction. Counsel testified that before the trial he had discussed the matter of a bail bond with Cooper and there was no indication that he had the financial means to procure a bond, even had it been reduced from $10,000.00 to $5,000.00. See Hearing Transcript, pages 160–161. A similar situation existed after conviction in respect to an appeal bail bond, therefore no attempt was made to request the court to set one. See Hearing Transcript, pages 158–159.

Petitioner in this Court has been ably represented by Attorney Walter B. Schatz of the Connecticut bar, whom this Court appointed. The Court expresses its appreciation to him for the earnest and valuable service which he has rendered in this case.

This Court heard and saw the petitioner testify; it reviewed the voluminous original record, the exhibits and all the transcripts of petitioner's related habeas corpus actions in the state courts. The testimony of the petitioner, both at this hearing and in the trial record, is un-

worthy of belief. The Court finds that no injustice has been done to the petitioner in this case. An accused is not entitled to a perfect trial, but he is entitled to a fair trial. This petitioner received a fair trial. The petition is denied.