STATE OF CONNECTICUT *v.* JOHN S. DEVINE ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued May 4—decided July 19, 1962

*Irwin D. Mittelman,* special public defender, for the appellant (defendant Devine).

*John E. Larson,* special public defender, for the appellant (defendant Cooper).

*Harry Hagel,* special state's attorney, for the appellee (state).

BALDWIN, C. J. The defendants, Thomas C. Cooper, John S. Devine and Robert F. Smith, were tried, jointly, to a jury on an information charging them with conspiracy. They were found guilty. Devine and Cooper appealed.

The defendants were without funds to employ counsel for themselves. Cooper was represented at the trial by the public defender, Richard C. Parmelee. Devine and Smith were represented by special public defenders appointed by the trial court. After the appeal had been filed Cooper and Devine, hereinafter called the defendants, attempted to perfect the appeal themselves. Thereafter, the court appointed the special public defender who had represented Devine at the trial to represent him on the appeal. Subsequently, Devine sought, without success, to have his counsel removed, and both he and Cooper moved for the appointment of other counsel. Cooper persisted in his attempt to perfect his own appeal, with consequent confusion and delay. When the cases were first assigned for argument in this court, he asked

for a continuance and for the appointment of counsel. Devine offered no objection. The public defender appointed to succeed Richard C. Parmelee, who had resigned his office, was assigned to Cooper's defense and proceeded with his appeal. These facts are noted in order to explain most of the delay preceding the argument and consideration of this case in this court.

The information charged the defendants with the crime of conspiracy in violation of § 54-197 of the General Statutes in that they conspired between June 7, 1959, and July 17, 1959, to commit the crimes of breaking and entering and of larceny in violation of §§ 53-76 and 53-63 of the General Statutes, and that in furtherance of the conspiracy they stole from the premises of the Connecticut Light and Power Company in Essex copper wire of a value in the aggregate of more than $2000.[1] The trial

[1] The information read: "Bernard A. Kosicki, State's Attorney, within and for said County, accuses John S. Devine and Thomas C. Cooper, both of New York City, New York, and Robert F. Smith, of Indianapolis, Indiana, of the crime of conspiracy, in violation of Section 54-197 of the General Statutes of Connecticut, Revision of 1958, in that they did conspire, on divers dates between on or about June 7, 1959, and July 17, 1959, to commit the crimes of breaking and entering, and of larceny, in violation of Sections 53-76 and 53-63 of said General Statutes, Revision of 1958; and in particular, that they did conspire to commit said crimes against The Connecticut Light and Power Company, at Essex, Connecticut, by breaking and entering a building in the possession of said company, used as a place for the custody of property, and to steal therefrom copper wire belonging to said company, in violation of said Statutes; and in pursuance of said conspiracy, at divers times between on or about June 24, 1959, and July 16, 1959, they did break and enter a building in the possession of The Connecticut Light and Power Company, at Essex, Connecticut, with intent to commit a crime therein; and in further pursuance of said conspiracy, did steal from said premises goods or chattels belonging to said company, and in particular, copper wire of the value in the aggregate of more than $2,000; and the said accused stand informed against for said crimes and violations of the Statutes aforesaid."

court instructed the jury that the state had failed to prove a conspiracy to commit the crime of breaking and entering in violation of § 53-76 but had offered evidence which tended to prove conspiracy to commit larceny in violation of § 53-63. The case was submitted to the jury on the charge of conspiracy to commit larceny.

The evidence offered by the state can be stated in summary as follows: During the period from June 24 to July 17, 1959, the power company, by taking inventories, discovered that quantities of copper wire were missing from its premises in Essex, where the wire had been stored on a concrete platform. This platform was completely enclosed by a chain link fence but was otherwise open to the weather. Representatives of the company complained to the state police. On July 16, Francis J. McGrath, an employee of the company, and John F. O'Brien, a state police officer, inspected the premises. They discovered near the platform a vertical cut in the fence, large enough for a person to pass through it and to transport or drag through it coils of wire weighing 100 pounds. Outside the fence there were indications on the ground and in the surrounding vegetation that objects had been dragged to West Street, a highway which ran parallel to the fence. Near the platform, a small metal object, which was part of a shirt button, was found. During the night of July 16, William Griffin, a state police officer, was watching in a building immediately adjoining the platform. Shortly after 12:30 a.m. on July 17, a Chevrolet automobile with a "U-Haul-It" trailer drove up on West Street and then drove off. Five to ten minutes later, Griffin heard a noise and saw a man running toward the platform where the wire was stored. The platform

and surrounding area were sufficiently illuminated to enable Griffin to observe persons and objects on and about the platform. A few minutes later, two other men appeared within the fence and ran toward the platform. Griffin heard a loud crash from some falling object and a noise which sounded like wire being pulled from a reel. One man was working on the wire at one place on the platform and the others at another. While Griffin was apprehending Smith, who was the man working alone, one of the others climbed over the fence. After the arrest of Smith, the two other men could not be found on the premises.

Smith was arrested at about 2 a.m., and his arrest was reported to headquarters at about 2:18 a.m. About 2:30 a.m., a toll collector, who had been alerted, saw a Chevrolet car with a "U-Haul-It" trailer pass through the toll gate on the Connecticut turnpike at Branford, twenty-four miles away. The car had a Florida license. At the trial, the toll collector identified Cooper as the driver, but he did not identify the other man riding in the car. On June 29, 1959, Cooper had sold 2070 pounds of copper wire to A. S. Woodstein, Inc., in Elizabeth, New Jersey, and received a check for $476.10. On July 1, he had sold the Woodstein company 1680 pounds of copper wire and received a check for $386.40. On July 16, he had sold 2020 pounds of copper cable to the Woodstein company for $444.40. These three lots of wire were substantially the same in weight as the quantities found missing by separate inventories taken at that time by the Connecticut Light and Power Company. The last wire sold could be, and was, identified as wire stolen from the company between July 13 and July 16. Cooper had sold wire on previous occasions to the Woodstein

company. An officer of that company identified Cooper as the man who sold wire to him on June 29, July 1 and July 16. He identified Devine as the man who was with Cooper. Cooper, Devine and Smith had registered in hotels in Norwalk and New London, Connecticut, during the period when the wire was taken. All three were identified as having been together on those occasions. There was a record of a telephone call from Cooper in New London to the Woodstein company in Elizabeth, New Jersey, on June 29. Cooper had rented a Chevrolet with the Florida license IE-16373 from the Avis-Rent-A-Car service in Providence, Rhode Island on July 7. On July 13, Cooper, Devine and Smith had been apprehended and detained in Rhode Island when Cooper was driving this Chevrolet and Devine was driving a panel truck, registered in Cooper's name, in which there was a quantity of copper wire. The truck was detained by the Rhode Island police. A "U-Haul-It" trailer was rented by Cooper in New York on July 14. Cooper identified Devine as a driver in his employ. The part of a button found on July 16 near the platform on the premises of the Connecticut Light and Power Company came from a shirt, with Cooper's name on it, which was worn by Smith at the time of his arrest. Devine, after his arrest, confessed participation in the thefts. He also admitted having cut the hole in the fence and being with Cooper in the Chevrolet car at the toll station on the early morning of July 17. Cooper, Devine and Smith, before coming to Connecticut, had crossed the country from California. Devine admitted to engaging in thefts of copper wire during this cross-country trip. Cooper admitted only the sale of it. The wire stolen in Essex was valued at $2884.17.

Cooper's testimony can be summarized as fol-

lows: He stayed at the Hotel Mohican in New London while attending a convention of veterans of the submarine service. There was no agreement with Devine and Smith other than that he would employ them in a business which he intended to open in Rhode Island in July. He had done business with the Woodstein company during a period of several years, including June and July, 1959. The checks which were introduced in evidence by the state were received by him from the Woodstein company for copper metal, but they were for wire obtained in Pennsylvania and Virginia. He had never been on the premises of the Connecticut Light and Power Company in Essex. The Chevrolet automobile was rented in Rhode Island to take his children for a drive, and the trailer in New York to get some trunks and tools he had left in Rhode Island. He had employed Devine to work for him as a driver in Nevada, but he had not employed him since. He, Cooper, had been convicted in Arizona of theft of government property and passing bad checks, and in California of petty thefts and receiving stolen property.

Devine took the witness stand only for the purpose of testifying as to the circumstances under which his confession was elicited by the Connecticut police. He claimed that this confession was involuntary and therefore inadmissible.

We will consider Cooper's appeal first. Cooper claims that the information is defective because it does not describe the object of the conspiracy charged with sufficient particularity to show whether the conspiracy was to commit a felony or a misdemeanor. The essence of the offense of conspiracy is the unlawful combination and an act done in pursuance thereof, not the accomplishment of the ob-

jective of the conspiracy, whether lawful or unlawful. General Statutes § 54-197; *State* v. *Hayes,* 127 Conn. 543, 588, 18 A.2d 895. An information charging a conspiracy for an unlawful purpose may properly allege acts done in furtherance of the conspiracy. *State* v. *Gannon,* 75 Conn. 206, 208, 52 A. 727; *State* v. *Bradley,* 48 Conn. 535, 548. The information in the instant case charged a conspiracy to commit larceny in violation of General Statutes § 53-63, and that in "pursuance of said conspiracy [the defendants] did steal . . . copper wire of the value in the aggregate of more than $2,000." Section 53-63, as it read at the time of the defendants' conspiracy, fixed penalties which made a theft of property valued in excess of $50 a felony, and a theft of property of the value of $50 or less a misdemeanor. See General Statutes § 1-1. Section 54-197, relating to conspiracy and cited in the information, states specifically that if the crime which is the object of the conspiracy is a misdemeanor, the penalty shall be that provided for the commission of the misdemeanor. The information here, by alleging the acts done in furtherance of the conspiracy, together with the value of the property stolen, clearly charged a conspiracy to commit a felony. The information was sufficient in law.

Cooper also claims error because the trial court failed to charge the jury concerning the value of the property the theft of which was the object of the conspiracy. As stated hereinbefore, the information charged a conspiracy to commit a felony. Section 54-197 provides that if the crime which is the "object" of the conspiracy is a misdemeanor, the penalty imposed shall be that provided for the misdemeanor. The gist of the offense of conspiracy is the unlawful combination for the accomplishment

of some object, in this instance, the theft of copper wire of the value in the aggregate of more than $2000. Under the statute, the object of the conspiracy merely determines the penalty. The court properly charged that the crime would be established if the state proved a combination, confederation or agreement between two or more persons to accomplish an unlawful act and the doing of some act in furtherance of the conspiracy by one or more of the parties. The court further correctly charged that it was not necessary for the state to prove that the unlawful object of the conspiracy was ever successfully accomplished or that any larceny was ever committed in any amount. The court called the attention of the jury to the "large volume of evidence" offered by the state. Included in that evidence was testimony that the wire stored on and missing from the premises of the Connecticut Light and Power Company between the dates specified in the information was worth $2884.17. There was also evidence from which the jury could find that each of the three lots of copper missing from the premises of the power company and claimed by the state to have been stolen by the defendants and sold to the Woodstein company was worth more than $50. This evidence supported the claim that the object of the conspiracy was to commit a felony.

The court charged the jury that if the state's evidence "is accepted and believed by you," it would tend to prove the object of the conspiracy to be to steal the wire stored on the premises of the power company. When the jury returned after deliberating and were asked by the clerk whether they found the defendants guilty or not guilty as charged, and responded "guilty," the verdict left no doubt that the guilt was of a conspiracy the object of which

was the commission of a felony. The defendants do not claim that there was evidence from which the jury could find the object of the conspiracy to be a theft of wire of the value of $50 or less, nor could they, because there was none. Consequently, there was no basis for a charge that if the jury found the object of the conspiracy to be the theft of wire worth $50 or less, they might find the defendants guilty of the lesser crime of conspiracy to commit a misdemeanor. *State* v. *Pallanck,* 146 Conn. 527, 529, 152 A.2d 633; *State* v. *Mele,* 140 Conn. 398, 401, 100 A.2d 570; *State* v. *Monte,* 131 Conn. 134, 135, 38 A.2d 434. The defendants' argument concerning the language of the judgment file which referred to a conviction of conspiracy to "commit the crime of larceny of goods or chattels of the value in the aggregate of more than $50" is without merit. That language was merely the customary technical description of the felonious object of the conspiracy described in the information.

Cooper further claims error in the admission in evidence of Devine's and Smith's confessions. These confessions, made after the termination of the conspiracy, were not admissible to prove Cooper's guilt. *State* v. *Luzzi,* 147 Conn. 40, 44, 156 A.2d 505, and cases cited. They were admissible only as against the confessors. They were offered by the state near the end of its case. Before admitting them, the trial court heard evidence, in the absence of the jury, concerning the circumstances under which they were given. Having decided to admit them, the court recalled the jury and instructed them specifically, in each instance, that the confession was admissible only as evidence affecting the one who made it. Later, in its charge, the court instructed the jury again that Smith's confession was not to be taken

as evidence against Cooper or Devine and that Devine's confession was not to be taken as evidence against Cooper or Smith. There was no error in the charge on this feature of the case. *State* v. *McCarthy,* 133 Conn. 171, 175, 49 A.2d 594; *Delli Paoli* v. *United States,* 352 U.S. 232, 237, 77 S. Ct. 294, 1 L. Ed. 2d 278; see *State* v. *Taborsky,* 147 Conn. 194, 199, 158 A.2d 239.

An examination of the entire transcript of the trial discloses ample support in the evidence, independent of the confessions, to prove Cooper's participation in the conspiracy beyond a reasonable doubt. There is no error on Cooper's appeal.

Devine's principal claim of error concerns the exclusion of evidence offered by him before the jury concerning events which took place in Rhode Island and which he claimed had a bearing on his confession. Devine, with Cooper and Smith, was apprehended by the Rhode Island police on the early morning of July 13, 1959. They were questioned and released on July 14. Devine was arrested in New York and, on the afternoon of July 20, brought to Connecticut. He was questioned, and his statement was taken, and was signed by him, between 6 and 8 p.m. on July 20. When his confession was offered in evidence, objection was made, and the court excused the jury. In the absence of the jury, Devine testified that he was questioned on July 13 for from four to five hours by the Rhode Island police; that they physically abused him, beating him with their fists, knocking him down, grabbing him by the hair and administering a so-called judo chop on him; and that the Connecticut police threatened to treat him in the same way and so he signed the statement. On cross-examination, he stated that when the Connecticut police questioned him, he was

not roughly treated and no force was used, but he was threatened with severe sentences. The court admitted the confession over Devine's objection and recalled the jury. After the state had rested, Devine took the stand to offer testimony relating to his confession. He stated that when he confessed to the Connecticut police, he was tired from being detained three days in New York and that he was threatened with long sentences. The police, in their testimony preceding the offer of the confession, stated that no threats were made.

This case was tried before the decision of the Supreme Court of the United States in *Rogers* v. *Richmond,* 365 U.S. 534, 81 S. Ct. 735, 5 L. Ed. 2d 760, which involved the correctness of the standard for the admissibility of confessions under the Connecticut law. We had held that a confession is not admissible in evidence unless it is voluntary; *State* v. *Taborsky,* 147 Conn. 194, 208, 158 A.2d 239, and cases cited; and that the issue whether the confession is voluntary and admissible is one of fact for the trial court, which exercises a legal discretion. *State* v. *Lorain,* 141 Conn. 694, 699, 109 A.2d 504; *State* v. *DiBattista,* 110 Conn. 549, 562, 148 A. 664. In *State* v. *Rogers,* 143 Conn. 167, 173, 120 A.2d 409, cert. denied, 351 U.S. 952, 76 S. Ct. 850, 100 L. Ed. 1476, we held that the question is whether the circumstances which brought about the confession "induced the defendant to confess falsely." In *Rogers* v. *Richmond,* supra, the Supreme Court of the United States held that this standard was not a permissible one under the due process clause of the fourteenth amendment to the federal constitution. The court said (p. 544) : "The attention of the trial judge should have been focused, for purposes of the Federal Constitution, on the question whether

the behavior of the State's law enforcement officials was such as to overbear . . . [the accused's] will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not . . . [the accused] in fact spoke the truth." Put another way, the confession must be the product of an essentially free and unconstrained choice by the maker. *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037.

The trial court did not make a finding of facts relating to the admission of Devine's confession. See *State* v. *Lorain,* supra, 697. It may have disbelieved his testimony in whole or in part. There were inconsistencies in the testimony, and there was other conflicting evidence. We need not speculate, however, concerning the motivation for the court's decision to admit the confession since Devine has not by his assignments of error, his argument or his brief presented the issue of the admissibility of the confession. The narrow issue before us is whether the trial court erred in refusing to admit before the jury the testimony concerning the alleged conduct of the police officers in Rhode Island which he gave to the court when it was considering the admissibility of the confession in the absence of the jury. The offer of this testimony before the jury raised an issue of relevancy. The exclusion of the testimony was a matter within the discretion of the court. Devine had not been apprehended by the Rhode Island police for any crime committed in Connecticut. The Rhode Island affair was unrelated to the Connecticut arrest and had occurred a week before. The court could well have considered the episode remote and unrelated to the taking of Devine's confession by the Connecticut

police. *State* v. *Penn,* 144 Conn. 148, 155, 127 A.2d 833; *State* v. *Leopold,* 110 Conn. 55, 66, 147 A. 118. There was no abuse of discretion in this ruling.

Another claim of error by Devine concerns the charge to the jury regarding the confession. The claim made in this connection is not that the charge was wrong but that the exclusionary ruling just discussed made it impossible for the jury to determine, in accordance with principles correctly outlined in the charge, the weight to be given to the confession. This is an attempt to raise in another way the evidential ruling hereinbefore discussed. There is no merit to the claim of error in the charge.

Devine also claims that some of the state's claims of proof in the finding are not supported by the evidence. The state has properly presented evidence in an appendix to support the findings attacked. Practice Book § 447; *State* v. *Pundy,* 147 Conn. 7, 9, 156 A.2d 193; Maltbie, Conn. App. Proc. §§ 330, 331. Devine is evidently under the impression that the finding could be used in considering the denial of his motion to set aside the verdict. A finding in a case tried to a jury serves no such purpose. The ruling on a motion to set aside a verdict is reviewed on the evidence. *Messier* v. *Zanglis,* 144 Conn. 449, 455, 133 A.2d 619; *Salvatore* v. *Hayden,* 144 Conn. 437, 439, 133 A.2d 622; Maltbie, Conn. App. Proc. § 185, p. 227; see *State* v. *Weinrib,* 140 Conn. 247, 248, 99 A.2d 145. We have examined the entire record and find ample evidence to prove Devine's guilt as charged. The trial court did not err in denying the motion to set aside the verdict.

There is no error.

In this opinion the other judges concurred.