STATE OF CONNECTICUT *v.* KERRY STAPLES

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and HEALEY, Js.

Argued April 6—decision released July 11, 1978

*Greig R. Siedor,* with whom, on the brief, was *Igor I. Sikorsky, Jr.,* for the appellant (defendant).

*Robert M. Meyers,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. On a trial to a jury the defendant was found guilty of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1) and of attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49 and 1975 Public Acts, No. 75-619 (3) (now General Statutes § 53a-70). He has appealed from the judgment only with respect to the conviction of attempted sexual assault in the first degree. The sole issue on this appeal concerns the admission of a confession made by the defendant. The trial court conducted a hearing out of the presence of the jury to determine whether the defendant had given the confession voluntarily. At that hearing, the defendant objected to the admission of his written confession and both the state and the defendant offered evidence.

At that hearing the state offered the following evidence: The defendant was arrested on October 2, 1975, at about 1:35 a.m., by Officer Randell J. Blair of the New Britain police department. Blair advised the defendant of his *Miranda* rights, reading those rights from a card, and the defendant indicated he understood his rights. He was brought

to the police station and booked without being questioned at all. No force or threats were employed in the cell in which he was placed. About one hour, but not more than one and one-half hours later, the defendant was brought from his cell by Officers Robert S. Remillard and William R. Chute and he was advised of his constitutional rights by Remillard in the presence of Chute. Specifically, he was advised of his right to remain silent, that anything he said could and would be used against him in court, that he could consult with and have present an attorney during questioning and that, if he could not afford an attorney, one would be appointed for him before any questioning. He was also specifically advised that he could stop answering at any time and could talk to an attorney at any time and have him present during any further questioning. There was no conversation with the defendant before the rights were read. The defendant then indicated orally and in writing that he understood his rights and that he waived his rights. The defendant then engaged in a conversation with the police and signed his confession. The entire transaction in the interrogation room occupied close to one and one-half hours. The defendant was provided with coffee and cigarettes and there were no signs that he was under the influence of alcohol or drugs. He was seated, speaking clearly and was not physically restrained. The lighting and temperature were adequate and comfortable. No force was used upon him nor were any threats, promises or offers made to him. No evidence of force or physical abuse was apparent upon the defendant. The defendant then appeared before Sergeant Louis Harkins exhibiting no signs of abuse and he spoke clearly and swore to the truth of his confession.

The victim, who testified with the assistance of an interpreter, said that she was awakened at approximately 1 a.m. by someone telling her a neighbor needed her. She said that the person calling broke into her home, that he broke the glass on the door, that she saw blood and that she saw a knife in the intruder's hand. A struggle ensued in which she fought hard, striking the intruder with her arms. She identified the defendant as the intruder that same night at the New Britain police station. The defendant cut his hand and bled when he broke the glass in the door of the victim's home.

The defendant offered the following evidence: John Lee Baker was in the jail cell next to that of the defendant and he saw the defendant when the latter was brought into the New Britain police station jail. Baker said that some fifteen minutes after the defendant arrived, two police officers came to the defendant's cell, entered it and ordered him to strip. Baker said he heard racial epithets directed at the defendant, yelling, and the sound of someone being beaten and falling to the floor, all coming from the cell in which the defendant was confined. Baker said he heard the officers say that the defendant was going to confess. The officers stayed in the defendant's cell for approximately five minutes. He also said two officers came to take the defendant from his cell, but although he appeared to be in pain, Baker did not see any bruises on the defendant's face.

The defendant's mother spoke to the defendant on October 2, 1975, by telephone at 6 a.m. and she saw him at the jail at 9:30 a.m. On the day before she saw no bruises on his body. When she saw him at 9:30 a.m. on October 2, 1975, his white suit,

which had been clean the day before, was grass-stained and blood-stained and she saw welts and bruises on his arms, legs and face. A public defender said that he met with the defendant on October 2, 1975, between 11 a.m. and 12 noon, at which time he observed welts on the defendant's arms, a scratch on his face, and an apparent limp.

After a full hearing on the admissibility of the defendant's confession the trial court made a statement on the record which concluded as follows: "Now, considering all the testimony, and all the inferences that could be logically and reasonably made, the Court finds that this statement made by the accused was made voluntarily, knowingly and intelligently."

The leading case in this area is *Lego* v. *Twomey,* 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618, in which the issue before the United States Supreme Court was the standard of proof required to demonstrate the voluntary nature of the confession, before it is admitted into evidence. A brief recital of the facts in *Lego* v. *Twomey,* is appropriate: Lego was tried for armed robbery in an Illinois state court. At his trial, Lego challenged the voluntariness of the confession offered in evidence against him; this confession had been given by him to the police after his arrest and while in the police station. On the challenge, the trial judge conducted a hearing on its admissibility out of the presence of the jury. Lego testified that he had been beaten by the police while the police denied any beating or threats. A photograph, taken the day after his arrest, was introduced into evidence to substantiate his allegation. That photograph indicated that his face was swollen and had traces of blood on it. The trial

judge, applying the preponderance of the evidence standard of proof, admitted the confession. He also found that Lego's condition in the photograph was "well explained by the defendant himself" as Lego admitted, under oath, that he had obtained a facial wound during a struggle with the complaining witness over the gun. Although the trial judge did not state the standard he used, Illinois law permitted a preponderance standard at a voluntariness hearing.

In *Lego,* the Supreme Court reiterated what it had articulated in *Jackson* v. *Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908, that "when a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered." *Lego* v. *Twomey,* supra, 489. It then said "[t]hus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." Id. The court did, however, leave the states free "pursuant to their own law, to adopt a higher standard." Id.

The defendant claims that, under Connecticut jurisprudence, the confession of a criminal defendant must be proven voluntary beyond a reasonable doubt before being admitted into evidence against that defendant. Although we have not had this question squarely before us, we have had occasion to point out, citing *Lego,* that "[t]he prosecution has the burden of proving voluntariness at least by the fair preponderance of the evidence." *State* v. *Bartee,* 167 Conn. 309, 313, 355 A.2d 250. The defendant claims that when a confession of guilt is attacked as having been involuntarily obtained,

the reliability of the confession is raised and the principle requiring that guilt be proven beyond a reasonable doubt is "debased" unless it is required that voluntariness be proven by the same standard of proof.

In *Jackson* v. *Denno,* supra, the United States Supreme Court recognized as axiomatic "that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession." *Jackson* v. *Denno,* supra, 376. In that case the court also said (p. 376–77) "Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession. *Rogers* v. *Richmond,* . . . [365 U.S. 534, 81 S. Ct. 735, 5 L. Ed. 2d 760]." In *Lego* the court rejected the same argument that this defendant makes here in urging the beyond a reasonable doubt standard for determining voluntariness as it goes to its reliability. In that case, as here, the defendant urged the reasonable doubt standard for the admission of a confession as voluntary as well as proof of his guilt. The claim made here by the defendant is that to do otherwise would contravene *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368, which went no further than to confirm the fundamental right that protects an accused "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." See *Lego* v. *Twomey,* supra, 486. In effect, the United States Supreme Court made clear that while a determination affected sub-

stantial constitutional rights, the reasonable doubt standard would not be mandated unless an element of the crime was involved. *Lego* v. *Twomey,* supra, 487. In *Lego,* the court rejected the argument that the voluntary nature of a confession must be proven beyond a reasonable doubt on the ground that implicit in it was an unjustified assumption that a voluntariness hearing was designed to enhance the reliability of jury verdicts or to implement the presumption of innocence. *Lego* v. *Twomey,* supra, 482, 485, 487. "[A] guilty verdict is not rendered less reliable or less consonant with *Winship* simply because the admissibility of a confession is determined by a less stringent standard." *Lego* v. *Twomey,* supra, 487.

Implicit in this argument of the defendant is the claim that the values served by the exclusionary rules, including the deterring of improper police conduct, independently demand that the reasonable doubt standard be required in the admissibility of confessions. In rejecting the same argument in *Lego,* the court said (p. 488) that not only did Lego himself not offer anything to suggest that admissibility rulings have been "unreliable or otherwise wanting in quality" because not based on some higher standard than a preponderance, but also their experience over many years disclosed that no substantial evidence had accumulated that federal rights had suffered from determining admissibility by a preponderance of the evidence. Lacking good cause demonstrated, the *Lego* court declined "to expand currently applicable exclusionary rules by enacting additional barriers to placing truthful and probative evidence before state juries and by revising the standards applicable in collateral proceedings." *Lego* v. *Twomey,* supra, 488. It found

no "sound reason" for moving further in that direction at that time, particularly mindful that the exclusionary rules themselves are "very much aimed at deterring lawless conduct by police and prosecution" and because "it is very doubtful" that escalating the prosecution's burden in suppression hearings would be sufficiently productive "in this respect to outweigh the public interest in placing probative evidence before juries for the purpose of arriving at truthful decisions about guilt or innocence." *Lego* v. *Twomey,* supra, 489.

In permitting the states to adopt the less stringent preponderance standard, the United States Supreme Court did so recognizing that any indication that the confession resulted from coercive factors in and of itself offended constitutional principles irrespective of the truth or falsity of the confession. *Lego* v. *Twomey,* supra, 485; see also *Rogers* v. *Richmond,* 365 U.S. 534, 540–41, 81 S. Ct. 735, 5 L. Ed. 2d 760. It reaffirmed the constitutional rule as requiring proof of guilt beyond a reasonable doubt on the basis of constitutionally obtained evidence. It set the constitutional imperative of proof by the prosecution by at least a preponderance of the evidence. It recognized that the ultimate test of admissibility is the voluntariness of the confession. *Lego* v. *Twomey,* supra; see also *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037; *State* v. *Traub,* 151 Conn. 246, 249, 196 A.2d 755. We have been given no valid reason why proof by this standard, with a judge making a positive finding on voluntariness, does not provide a fair and workable test which affords a criminal defendant those rights guaranteed him by both the United States and Connecticut constitution. Accordingly, we hold that a trial court should follow the pre-

ponderance of the evidence standard and not the reasonable doubt standard in determining whether or not the state has sustained its burden of proving voluntariness when a confession of a criminal defendant is offered into evidence.

The defendant further claims that the evidence before the trial court was insufficient to sustain its conclusion that the confession was voluntarily obtained. We take up this claim with the related claim that admitting the confession was not harmless error. The United States Supreme Court in *Lego* indicated that it could fairly assume at the time *Jackson* v. *Denno,* supra, was handed down, as well as the time that *Lego* was decided "that a judge would admit into evidence only those confessions that he reliably found, at least by a preponderance of the evidence, had been made voluntarily." *Lego* v. *Twomey,* supra, 484. We make the same assumption. The state has the burden of proving voluntariness by at least a preponderance of the evidence. *Lego* v. *Twomey,* supra; *State* v. *Bartee,* 167 Conn. 309, 355 A.2d 250; 3 Wharton, Criminal Evidence (13th Ed.) § 672. The question of the credibility of witnesses is for the trier to determine. *State* v. *Johnson,* 162 Conn. 215, 226, 292 A.2d 903. Where testimony is conflicting the trier may choose to believe one version over the other; *Cappiello* v. *Haselman,* 154 Conn. 490, 496, 227 A.2d 79; as the probative force of the evidence is for the trier to determine. *Davis* v. *P. Gambardella & Son Cheese Corporation,* 147 Conn. 365, 371, 161 A.2d 583. "It is the function of the trial court to determine the relative credit to be given to the testimony of witnesses and to deduce reasonable inferences from the evidence." *State* v. *White,* 169 Conn. 223, 242, 363 A.2d 143.

While the admissibility of a confession is determined by the trial court, that determination must be made according to constitutional standards which satisfy the due process clause of the fourteenth amendment. *Rogers* v. *Richmond,* supra, 545. The ultimate test of admissibility is the voluntariness of the confession. *Culombe* v. *Connecticut,* supra, 602; *State* v. *Traub,* supra, 249. The circumstances which enter into such a determination are many. The facts in each case must be closely scrutinized. *Gallegos* v. *State of Colorado,* 370 U.S. 49, 52, 82 S. Ct. 1209, 8 L. Ed. 2d 325. " '[T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of "law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions, not freely self-determined . . . ." *Rogers* v. *Richmond,* 365 U.S. 534, 544, [81 S. Ct. 735, 5 L. Ed. 2d 760] (1961) . . . .' " *United States* v. *Nussen,* 531 F.2d 15, 21 (2d Cir.). "Put another way, the confession must be the product of an essentially free and unconstrained choice by the maker." *State* v. *Devine,* 149 Conn. 640, 653, 183 A.2d 612, citing *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037.

The trial court had before it conflicting evidence on the issue for its decision. It is apparent that critical credibility judgments were called for and made. The fact that the defendant offered "independent evidence" of the alleged coercion does not require any additional or different standards in assessing the evidence at the voluntariness hearing than those set out above. The issue of whether the confession is voluntary and admissible is one of fact for the trial court upon which it exercises a legal discretion. *State* v. *Devine,* supra, 652.

Although the trial court did not make a finding of facts relating to its admission of the confession, it did recite for the record a summary of the evidence and concluded that the confession of the defendant "was made voluntarily, knowingly and intelligently." There was evidence before the trial court, which, if believed, provided the basis for the finding of voluntariness under the circumstances. There was no error in admitting the confession.

The defendant also claims that without the confession there was not sufficient evidence from which a jury could find the defendant guilty of the attempted sexual assault charge beyond a reasonable doubt. We do not reach this claim because of our determination that there was no error in admitting the confession which is dispositive of this claim.

There is no error.

In this opinion the other judges concurred.