STATE OF CONNECTICUT *v.* DONALD DEFORGE
(10902)

PETERS, HEALEY, PARSKEY, GRILLO and MENT, Js.

Argued June 6—decision released September 4, 1984

*Erskine D. McIntosh,* assistant public defender, for the appellant (defendant).

*David S. Shepack,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Duncan Forsyth* and *Carl Schuman,* assistant state's attorneys, for the appellee (state).

GRILLO, J. The defendant, Donald DeForge, was charged with murder in violation of General Statutes § 53a-54a (a) and (c). On November 10, 1980, after a trial by a jury of twelve, the defendant was found guilty as charged. After receiving a prison term of twenty-five years to life, the defendant appealed to this court.

The jury could reasonably have found the following facts: The defendant had been employed as a maintenance man at the Hamlet Green Apartments in Windsor prior to the murder. The victim lived in that apartment complex. On the evening of August 9, 1979, the defendant and his wife drove to the Hamlet Green Apartments. The defendant left the car armed with a knife and a black flashlight. Sometime between 10:30 and 11 p.m., he entered the victim's apartment using a duplicate master key which he had obtained during his employment at the apartment complex. When the defendant signalled his wife with the flashlight from inside the apartment, she left the premises.

Once inside the empty apartment, the defendant did not turn on the lights but rather used his flashlight in order to see. When he heard a noise at the front door,

he hid in the bedroom. The victim came into her apartment, went into the kitchen, and began to cook something at the stove. The victim turned on the television, then went into the bathroom and began to run the water in the bathtub.

When the victim walked into the bedroom, she saw the defendant and started to scream. The defendant grabbed her around the neck and a struggle ensued. The defendant struck the victim on the head and chest, knocking her out. He then picked her up, put her on the bed, and began to rummage through her dresser drawers.

As soon as the victim began to regain consciousness, the defendant grabbed her around the neck and hit her several times. The victim passed out for the second time. The defendant continued pillaging her drawers, then went into the living room and began searching through the victim's pocketbook. The defendant next returned to the bedroom to look through a drawer that he had missed.

When the victim again regained consciousness, she began to scream. The defendant took a bra from the drawer, pulled it around her neck, and choked her until she was unconscious. The defendant then returned to the living room and took money from the victim's pocketbook. Before leaving the apartment, the defendant placed the victim's body in the bathtub, then cut the screen of the patio door to simulate a forced entry. He left the apartment and was picked up a short time later by his wife.

The victim was found dead in her apartment on August 10, 1979, by a co-worker. On October 18, 1979, the defendant was arrested, advised of his rights, and charged with the commission of murder. He was brought to the interview room at the Windsor police department where he was again advised of his rights

and signed a "Notice of Right" form. Shortly thereafter, Detective Everett L. Overstrom came to the interview room and again advised the defendant of his rights. The defendant indicated that he understood his rights. Overstrom informed the defendant that he was under arrest for murder and that "if his wife, Wendy DeForge, was present during the commission of this crime at the Hamlet Green Apartments, that it would be a possibility that she could be arrested for this particular crime, also." The detective further informed the defendant "that if he wanted to give me a statement regarding her involvement or his involvement, that it was up to him." On cross-examination, the detective added that he told the defendant that only "he [the defendant] knows, the dead person knows and Wendy DeForge knows whether she [the defendant's wife] was there at the time of the crime." The detective then left the room and returned fifteen minutes later. The defendant indicated at this time that he wanted to talk. He was again advised of his rights. The defendant then gave a confession to the police.

At trial, the detective denied that he ever directly or by implication told the defendant that a deal involving his wife would be made in exchange for a confession. The defendant, however, testified that the police promised to stop proceedings against his wife if he gave a statement. He claimed that he signed the statement so that his wife would not "be tried on charges with the murder and the burglary."

On appeal, the defendant claims that the trial court erred by (1) admitting into evidence a photograph depicting the victim before the crime, (2) denying the motion to suppress the defendant's confession, and (3) refusing to strike certain testimony of the medical examiner.[1] We find no error.

---

[1] Various other claims of error advanced by the defendant need not be addressed by this court. Several of these claims concerning a statement

The first issue raised by the defendant concerns the admission of a color photograph of the victim as she appeared prior to the crime. The trial court, over objections by the defendant, admitted the photograph into evidence after the state stated that it would be used to establish "how she looked before and how she looked after [the murder] in trying to present to the jury the fact that she was killed intentionally." The defendant now argues that this evidence should have been excluded on the basis of relevancy since there was "neither any doubt expressed nor confussion [sic] manifested relative to the victim's identity . . . ."

It is well established that a trial court has broad discretion on questions of relevancy. *State* v. *Giguere,* 184 Conn. 400, 405–406, 439 A.2d 1040 (1981). Its determination will not be disturbed on appeal unless a clear abuse of that discretion is shown. *State* v. *Piskorski,* 177 Conn. 677, 701–702, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Hardwick,* 1 Conn. App. 609, 616, 475 A.2d 315 (1984). In the present case, the trial court, after

by the defendant made under oath on August 14, 1979, which was used to attack his credibility at trial, and the postverdict motion for acquittal were withdrawn prior to oral argument. We need not review the claim that the court erred in admitting into evidence certain slides of the deceased victim and the bedsheet. The defendant failed properly to summarize the evidence involving the slides in compliance with Practice Book § 3060F (c) (3). See *State* v. *Vass,* 191 Conn. 604, 621, 469 A.2d 767 (1983); *State* v. *Johnson,* 183 Conn. 156, 163–64, 438 A.2d 855 (1981). As for the bedsheet, the defendant claims on appeal that it was gruesome. At trial, however, the defendant objected on the grounds of relevancy and necessity. Since the defendant briefs on appeal an argument not made below, we need not address the issue of the admissibility of this exhibit. Practice Book § 3063; *State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983). Furthermore, even if the bedsheet were gruesome, that fact alone would not require exclusion if the exhibit was relevant and material. See *State* v. *Marshall,* 166 Conn. 593, 602, 353 A.2d 756 (1974). Nor must we address the claim that the trial court erred by allowing the use of the defendant's prior felony convictions for purposes of impeachment since this claim was not raised before the trial court at the suppression hearing. Practice Book § 3063; see *State* v. *Braman,* supra, 684–85.

hearing from the prosecutor that the picture was to be used to establish intent, ruled that the evidence was relevant. The burden was on the state to establish each element of murder beyond a reasonable doubt, and the state was entitled to introduce all legally competent evidence which could aid the trier of fact in determining relevant issues. *State* v. *Johnson,* 190 Conn. 540, 549-50, 461 A.2d 981 (1983). "It is a general rule without contradiction that where the photograph is shown to be a faithful representation of what it purports to reproduce, it is admissible as an appropriate aid to the jury in applying the evidence . . . ." *People* v. *Durrant,* 116 Cal. 179, 213, 48 P. 75 (1897). Furthermore, a photograph is admissible to establish the motive or intent of the defendant. See *State* v. *DeJesus,* 194 Conn. 376, 481 A.2d 1277 (1984); *State* v. *Piskorski,* supra, 699-702; 3 Wharton, Criminal Evidence (13th Ed.) § 637. After our review of the transcript, we cannot find that the trial court abused its discretion in concluding that the photograph was relevant in order to prove intent.

Equally without merit is the defendant's second claim that the trial court's denial of his motion to suppress his confession was erroneous. On appeal, the defendant argues that his statement was obtained by the implied promises of the police that the defendant's wife would be released if he confessed. Since his confession was the product of an involuntary discourse, the defendant maintains, the confession was void.

It is the state's burden to prove by a preponderance of the evidence that the challenged confession was made voluntarily. *Lego* v. *Twomey,* 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Hawthorne,* 176 Conn. 367, 370, 407 A.2d 1001 (1978). The test of voluntariness is whether an examination of all the circumstances shows that the conduct of police was such as to overbear the defendant's will to resist and bring

about a confession, not freely self-determined. *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961); *State v. Staples,* 175 Conn. 398, 408, 399 A.2d 1269 (1978). In other words, " 'the confession must be the product of an essentially free and unconstrained choice by the maker.' *State v. Devine,* 149 Conn. 640, 653, 183 A.2d 612 [1962], citing *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 [1961]." *State v. Staples,* supra, 408.

The trial court had before it conflicting evidence for its decision on the issue of voluntariness. The issue of whether the confession is voluntary and admissible is one of fact for the trial court within its legal discretion. *State v. Staples,* supra, 408, citing *State v. Devine,* supra, 652. Since the trier of fact is the ultimate judge of the credibility of witnesses, we may not pass upon the credibility of the witnesses. *Johnson v. Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975). Our usual deference to the trial court's finding on questions of this nature is qualified by the necessity for a scrupulous examination of the record to ascertain whether such a finding is supported by substantial evidence. *State v. Harris,* 188 Conn. 574, 580, 452 A.2d 634 (1982). In the present case, the court chose to believe the testimony of Detective Overstrom rather than the testimony of the defendant. The court found that "Detective Overstrom's remarks were something other than a promise to protect the [defendant's] wife from any further implication." There was evidence before the trial court which, if believed, provided the basis for the finding of voluntariness under the circumstances of this case. Accordingly, there was no error in admitting the confession.

Lastly, we are unpersuaded by the defendant's final claim that the trial court erred by allowing the medical examiner to relate the victim's injuries. At trial, the medical examiner recounted the findings of his

external examination of the deceased. Although he did not testify concerning the cause of these bruises, he did testify that the victim had suffered bruises around the vaginal area. On appeal, the defendant argues that since he was not charged with felony murder, "evidence concerning a sexual assault was immaterial, irrelevant and certainly inflammatory . . . ." He maintains that the trial court's refusal to strike the medical examiner's testimony constituted harmful error since this testimony was suggestive of a sexual assault. We disagree.

The trial court concluded that the evidence presented by the medical examiner was relevant on the issue of the defendant's intent. Rulings on relevancy are within the wide discretion of the trial court and will only be reversed for an abuse of that discretion. See *State* v. *Johnson,* 190 Conn. 540, 551, 461 A.2d 981 (1983); *State* v. *Piskorski,* 177 Conn. 677, 695–98, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). Evidence of the victim's injuries was probative on the issue of the defendant's intent. "An intent to cause death may be inferred from circumstantial evidence such as . . . the type of wound inflicted . . . ." *State* v. *Zdanis,* 182 Conn. 388, 396, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981). Nor does the defendant's contention that the testimony was suggestive of a sexual assault compel its exclusion. See *State* v. *Moye,* 177 Conn. 487, 502, 418 A.2d 870, vacated on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979). "The trier is often called upon to weigh the question whether the prejudicial tendency of evidence outweighs its probative value. In a criminal trial, evidence which tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material." *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970), citing *State* v. *Holliday,*

159 Conn. 169, 172, 268 A.2d 368 (1970). We find that the court could reasonably have concluded that the medical examiner's testimony was relevant on the issue of intent. Our examination of the record reveals no abuse of discretion.

There is no error.

In this opinion the other judges concurred.