[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. Statement of the Case
The defendant, Chauncey Watts, has filed a Motion to SuppressStatements. In support of his motion, the defendant has alleged that
(1) Said statement were not made knowingly and voluntarily;
 (2) Said statements were made without the assistance of counsel;
(3) Said statements were the product of an illegal arrest; and
 (4) The procurement of said statements was in violation of the defendant's rights as enumerated in the constitutional provisions cited herein
In his motion, counsel has cited the Fourth, Fifth, Sixth and Fifteenth amendment to the federal constitution. He has additionally cited Article One, Sections Seven and Eight of the state constitution. There was no accompanying memorandum of law.
An evidentiary hearing was conducted on March 17, 2000. During that hearing, the State introduced testimony from Officers John Wesoly and Peter Getz, and Detectives Luisa St. Pierre and James Rovella. The defendant also testified.
II Statement of the Facts
Based upon the testimony and evidence introduced at the suppression hearing, this court finds the following: CT Page 5085-cc
On September 29, 1995, on Franklin Avenue in the City of Hartford, Javier Mateo was shot and killed. Based upon information provided by eyewitnesses at the scene, police officers secured a warrant for the defendant's arrest.
At approximately 6:10 a.m. on August 2, 1998, the defendant called the Hartford Police Department and stated that he wanted to surrender himself. The call was made from a telephone booth at the Hartford train station. At that hour in the morning, there was no public transportation from the train station to police headquarters.
When Officer John Wesoly arrived at the train station, the defendant immediately identified himself as Chauncey Whitehead and stated that there was an outstanding warrant charging him with the crime of murder. Although the defendant attempted to enter the police cruiser, Officer Wesoly first handcuffed him. During the drive to police headquarters, the defendant asked a question concering the bond that had been set in his file. Officer Wesoly was unable to provide any information.
Shortly after the defendant's arrival at police headquarters, personnel on duty called Officer Peter Getz, one of the investigators initially assigned to the Javier Mateo homicide. He was also one of the affiants on the warrant for the defendant's arrest and thus was familiar with the defendant's photograph. Because the defendant had provided the name Chauncey Whitehead, Officer Getz had been summoned to police headquarters to confirm the defendant's identity.
When Officer Getz arrived at police headquarters, the defendant was in a central receiving area. He was not handcuffed. Office Getz identified the defendant, who used both Watts and Whitehead as surnames, arrested him, and then placed him in an interrogation room. Although Officer Getz did not initiate any conversation, the defendant asked several questions concerning potential bond, accomplice information and possible disposition of charges. The officer answered each question asked. The defendant also admitted that he was aware that he was sought for charges stemming from the Javier Mateo murder because of media coverage the day following the shooting. Although the officer offered the defendant both food and drink, the defendant declined both. The defendant did not ask for a lawyer.
Detectives Luisa St. Pierre and James Rovella entered police headquarters shortly after 9:00 a.m. Prior to interviewing the defendant, they first obtained some brief biographical information. They next CT Page 5085-cd advised the defendant of his rights pursuant to Miranda v. Arizona,384 U.S. 436 (1966). Detective Rovella read the defendant the Miranda
fights from a standard acknowledgment form.
The defendant had an ninth grade education; he could read and write English. At the time he gave his statement, the defendant was twenty years old. He did not appear to be under the influence of any drugs or alcohol. He was medically healthy. He was not taking any medication at the time.
Although the defendant could read and write English, the detectives read each paragraph of the waiver along with the defendant and after each assured that the defendant understood the particular right enumerated. The defendant acknowledged each of his rights, placed his initials after each, and ultimately signed the waiver form at 10:04 a.m. There was no question that the defendant was in custody pursuant to the outstanding arrest warrant.
The detectives advised the defendant of the charges against him. The defendant then provided the officers with the statement he now challenges. Throughout the interview, the detectives monitored the defendant's physical and verbal responses and his demeanor. He remained calm and appeared to comprehend the proceedings. The defendant denied any drug or alcohol use. He did not appear to be tired. He was neither shackled nor handcuffed. The defendant never requested any food or beverage. He did request and receive cigarettes. The detectives neither threatened the defendant nor made I any promises. At no point during the interview process did the defendant request an attorney. The defendant never asked to terminate the interview process.
Detective Rovella used a laptop computer to record the defendant's statement. The statement was typed as it was given by the defendant. As he typed, Detective Rovella read the written statement to the defendant who offered several versions of events and corrections before he initialed the final form and swore to the statement's accuracy. During the interview process, the defendant took his time and carefully chose the words he wanted used in the statement. This entire process concluded at 12:10 p.m.
After he completed his statement, the defendant called his mother. He was again offered food and drink. The defendant then consented to a search of his motel room in East Hartford where the officers found an identification card that the defendant had used while he was employed out of state as a magazine solicitor. The card had the defendant's CT Page 5085-ce photograph but bore the name Charles Blue. The defendant admitted that the identification card was a fake.
III Conclusions of Law
The defendant has challenged the use of his August 2, 1998 statement in a variety of manners. His first claim is that he did not make a knowing, voluntary and intelligent waiver of his privilege against self-incrimination.
In order to show that the defendant waived his privilege against self-incrimination, the state must prove by a preponderance of the evidence that he knowingly and intelligently waived his constitutional right to remain silent. State v. Toste, 198 Conn. 573, 579-80, 504 A.2d 1036
(1986). "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case." North Carolina v. Butler. 441 U.S. 369, 373 (1979). "[T]he question of waiver must be determined on `the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' Johnson v. Zerbst, 304 U.S. 458,464 [58 S.Ct. 1019, 82 L.Ed. 1461 (1938)]." North Carolina v. Butler,supra, 374-75.
Whether the defendant has "knowingly and intelligently waived" his rights under Miranda depends in part on the defendant's ability to understand and act upon his constitutional rights. Factors which may be considered by this court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity with the warnings; his level of intelligence; his age; his level of education; his vocabulary and ability to read and write in the language in which the warnings were given; intoxication; his emotional state; and the existence of any mental disease, disorder or retardation. See State v. Toste, supra,198 Conn at 580-81.
Finding that a defendant has waived his rights under the Miranda
doctrine is only one aspect of the necessary inquiry. Even if the defendant knowingly relinquishes his right to remain silent, the statement must be voluntary. It is clear that the use of an involuntary confession in a criminal trial is a violation of due process. State v.DeAngelis, 200 Conn. 224, 232, 511 A.2d 310 (1986). The state has the burden of proving the voluntariness of any confession by a fair preponderance of the evidence. State v. Schroff, 206 Conn. 182, 195,536 A.2d 952 (1988). CT Page 5085-cf
In State v. Pinder, 250 Conn. 385, ___ A.2d ___ (1999), the Connecticut Supreme Court reviewed criteria utilized in assessing the admissibility of confessions. There the Court noted:
 We have stated that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined The ultimate test remains . . . Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.
State v. Pinder, 250 Conn. at 418-419 (citations omitted).
This court is obligated to consider all circumstances surrounding the defendant's confession. State v. Carter, 189 Conn. 611, 622, 458 A.2d 369
(1983). The factors taken into account when assessing the totality of the circumstances include many of those used when determining the capacity of the defendant to waive his Miranda rights knowingly and intelligently. Turning to these factors individually, the following is noted:
 (1) The defendant's level of experience. There was no information that the defendant was familiar with police procedure. Despite his apparent lack of experience with police procedures, there is no indication that the defendant was unable to understand the both the rights he would waive and the consequences of that waiver. See State v. Pinder, 250 Conn. at 525-526 (twenty year old defendant with no prior criminal record).
 (2) The defendant's intelligence. No evidence was presented concerning any deficiencies in this regard. See State v. Deangelis, 200 Conn. 224, 235, 511 A.2d 310 (1986) quoting State v. Jones, 193 Conn. 70, 84-85, 475 A.2d 1087 (1984) (the fact that the defendant was somewhat deficient CT Page 5085-cg in mental ability, had a psychiatric disorder, and was upset emotionally, did not necessarily render his statements inadmissible.) Although the defendant has only a ninth grade education, his ability to read and write English was clearly established. The fact that he has a limited literacy level is not controlling. See State v. Gonzales, 206 Conn. 213, 217-20, 537 A.2d 460 (1989); State v. Hernandez, 204 Conn. 377, 395-6, 528 A.2d 794 (1987).
 (3) The defendant's age at the time of the confession. Here the defendant was twenty years old, an adult rather than a youth or juvenile. See State v. Perez, 218 Conn. 714, 591 A.2d 1.19 (1991) (statement of a fourteen year old admissible).
 (4) The defendant's lack of education. Although the defendant had only nine years of formal education, limited education alone does not preclude a finding of voluntariness. See State v. Toste, 198 Conn. at 581 (the defendant operated at about a sixth to seventh grade level.).
 (5) The defendant's vocabulary and ability to read and right in the language in which the warnings were given. Throughout the interrogation process, the defendant was articulate and cooperative. The interrogation was conducted in English, a language the defendant could speak, read and write.
 (6) The lack of any advice as to his constitutional rights. Here the advise was complete and repeated. All police officers who testified were credible witnesses. The defendant presented no evidence to the contrary. There is no credible testimony that Detectives Pitkin and Rovella both failed to follow standard operating procedure.
 (7) The length of detention. Although the detention prior to the defendant's confession lasted approximately five hours, this, of itself, is CT Page 5085-ch not coercive. See State v. Deangelis, 200 Conn. at 235 (10 1/2 hour interrogation); cf. Culombe v. Connecticut, 367 U.S. 568 (1961) (5 day interrogation).
 (8) The repeated and prolonged nature of the questioning. The defendant was not being interrogated the entire time he was at police headquarters. Rather, there were periods of time wherein the defendant was alone, either in the central receiving area or in the interrogation room. See State v. Carter, 189 Conn. 631, 637, 458 A.2d 379 (1983) (eight hour detention, during which the police interrogated the defendant for 7 hours, "though substantial in duration, does not remotely approach the length of those interrogations held to be so objectionable as to warrant reversal."). The interview in the present case was not the type of grueling interrogation that warrants suppression of the resulting statement.
 (9) The use of physical punishment, such as the deprivation of food and sleep. Here, the officers provided both food and beverage. There was no evidence that the defendant was either hungry, thirsty, tired or physically abused. See State v. Staples, 175 Conn. 398, 399-403, 399 A.2d 1269 (1978). Although the defendant alleges that he was tired, the evidence at the suppression hearing does not support this contention. See DeAngelis, 200 Conn. at 234 (the interrogating officer was aware that the defendant had not slept the previous evening). Carter, 189 Conn. at 638 (although the defendant was sleepy at the conclusion of the interview, the statement was nevertheless voluntary).
 (10) The defendant's general physical, mental and emotional state. Throughout the interview, the detectives monitored the defendant's physical and verbal responses and his demeanor. He remained calm and appeared to comprehend the proceedings. Although offered several times CT Page 5085-ci during the morning, the defendant never requested any food or beverage. He did request and receive cigarettes. The defendant did not appear to be tired. He was neither shackled nor handcuffed. The defendant denied any drug or alcohol use. He did not appear to be under the influence of any drugs or alcohol. He appeared to be medically healthy. He was not taking any medication at the time. See State v. Deangelis, supra, 200 Conn at 235.
In the present case, the defendant was an adult. During time between the homicide and his arrest, the defendant supported himself while living outside the State of Connecticut. He could communicate well orally and had good comprehension. There is no evidence of a low IQ, organic brain damage, personality disorder or any mental deficiency. There was no evidence that the defendant was either intoxicated, medicated or under the influence of drugs at the time he made the incriminating statements. There was also no evidence that the defendant's emotional state impaired his ability to understand his rights.
The defendant unconditionally waived his Miranda rights. When asked if he understood his rights, responded affirmatively and ultimately signed acknowledgment forms so indicating. His expressed willingness to speak constituted an explicit affirmative act evidencing waiver . . . SeeState v. Harris, 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied,460 U.S. 1089 (1983).
Waiver can be clearly inferred from the actions and words of the defendant. The defendant was given a series of options. There is no evidence that his free choice was impaired. Thus, his claim that his statement was not knowing and voluntary must fail.
The defendant's second argument is that his statements obtained were the fruit of an illegal arrest. The only evidence relating to the defendant's arrest was that the Hartford Police Department had secured a warrant for the defendant's arrest. There was absolutely no evidence that the warrant was in any way defective. Consequently, this argument must fail.
The defendant's third claim is that his statements were made without the assistance of counsel. Here the defendant's testimony differs from that of Detectives St. Pierre and Rovella. The resolution of the CT Page 5085-cj defendant's claim involves an assessment of credibility. State v. Madera,210 Conn. 22, 37, 554 A.2d 263 (1989).
This court recognizes that if a defendant indicates in any manner, at any time, that he desires an attorney, all interrogation must end until an attorney is present. See State v. Hafford, 252 Conn. 274, 289-290
___ A.2d ___ (2000). However, there must be some evidence that the accused expressed a desire to consult with counsel. In the present case, the credible testimony supports the conclusion that the defendant was promptly informed of his right to counsel. The record is replete with evidence that he desired to fully cooperate with the interrogating officers. See State v. Cobb, 251 Conn. 285, 360, ___ A.2d ___ (1999). His waiver of that right was unequivocal.
The defendant's final claim is that his inculpatory statements are inadmissable because they violate unspecified constitutional rights. Although the defendant attempts to rely on various constitutional provisions, he has provided neither legal nor factual support for this argument. Indeed, his motion is bereft of any analysis. This court is not in a position to supply that which is lacking.
Here the conduct of law enforcement officials was not such as to overbear the defendant's will to resist. State v. Derrico, 181 Conn. 151,163, 434 A.2d 356, cert. denied, 449 U.S. 1064 (1980). "There is no evidence that the police officers who interviewed the defendant induced his admissions with threats or promises, or subjected him to protracted periods of grueling interrogation." State v. Pinder, supra at 425 (internal quotations and citations omitted).
The defendant had the power to exert control over the course of the interrogation. There is no evidence that members of the Hartford Police Department crossed the fine line between "legitimate efforts to elicit admissions and constitutionally impermissible compulsion." Moran v.Burbine, 475 U.S. 412, 426 (1986).
The defendant's waiver of rights was neither contradictory nor equivocal. While with the detectives, the defendant was alert, lucid, communicative, and responsive. He seemed to have sufficient mental and intellectual capacity to comprehend the advisements, waivers, and questions propounded. His responses to the officers interrogation were voluntarily produced and arrived at without improper inducement, threat, or deprivation. The state has met its burden of demonstrating that the defendant had the capacity to understand his rights and that he knowingly and voluntarily waived them by answering the detectives' CT Page 5085-ck questions. Thus the, defendant's final arguments must fail.
Therefore, the motion to suppress is denied.
Dewey, J.